THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSEPHINE COOPER, Defendant-Appellant.

First District (5th Division)   No. 1—87—2352

Opinion filed April 14, 1989.—Rehearing denied May 10, 1989.

PINCHAM, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Bruce C. Landrum, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Linda S. Halperin, Assistant State's Attorneys, and Marie Quinlivan Czech, Special Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant, Josephine Cooper (Cooper), appeals from two orders of the trial court involving her plea of guilty to the charge of obstruction of justice for which she was sentenced to one year's probation. The basis of the charge was Cooper's concealment in a safety deposit box of a weapon used in the homicide of Rodney Williams, her father. Cooper's son was arrested and charged in connection with the shooting. On February 2, 1987, Cooper, while being represented by a public defender, pleaded guilty to the charge after court proceedings conducted by the trial judge pursuant to Rule 402 of the rules of the supreme court. (107 Ill. 2d R. 402.) She was sentenced to probation by the trial judge.

On February 10, 1987, Cooper filed a motion to withdraw her plea. Represented by a second public defender, her motion to withdraw was heard on July 7, 1987. After hearing evidence, the trial court denied the motion to withdraw. On July 22, 1987, Cooper, through the second public defender, filed her notice of appeal.

On October 6, 1988, a third public defender filed a brief charging

that the trial court committed reversible error by denying her motion to vacate on the grounds that Cooper was sick at the hearing on the date she withdrew her plea, that there was an insufficient factual basis for the plea, that Cooper did not understand the nature of the proceeding at which she withdrew her plea, and that she was not properly advised by her trial counsel.

In the brief, the third public defender pleads that Cooper's plea be vacated and her case remanded for trial.

Granting the relief requested in the appeal may be an act of judicial futility since Cooper's probation period appears to have long since passed. It might even be eventually harmful to Cooper if reversed and remanded for a new trial. The possibility of an increased punishment may exist. (*People v. McCutcheon* (1977), 68 Ill. 2d 101, 368 N.E.2d 886.) If affirmed, her claims of lack of adequate representation by trial counsel may be *res judicata* in any subsequent proceeding to set aside her felony conviction, based on her guilty plea. Confident that the able public defender now representing Cooper has adequately advised her of the result of her request in this case that her guilty plea be vacated and her case remanded for trial, the majority of this court addresses the points raised on appeal and feels it must affirm the trial court's action in accepting Cooper's plea and denying her motion to withdraw her plea.

After the Rule 402 proceeding (107 Ill. 2d R. 402) pursuant to which Cooper withdrew her plea of not guilty and entered a guilty plea, the trial judge then informed defendant of the nature of the charge to which she was pleading guilty and the sentencing provisions. After reading the charge to defendant, the judge asked her if that was the offense to which she was pleading and she responded, "Yes." Next, he discussed the rights she was waiving by pleading guilty, including the right to a jury trial, the right to confront witnesses against her and the right to a presentence investigation in the event that she was tried and convicted. Defendant indicated to the court that she understood and was waiving each of these rights. The judge then questioned her concerning the voluntary nature of her plea. She indicated that no one forced her to plead guilty, that she was doing so of her own free will and that no one had promised her anything in exchange for her plea other than the agreed-upon sentence of one year's probation. The judge then asked for a statement of facts. The assistant State's Attorney indicated that the parties would stipulate that if called to testify, Detective Robert Dwyer would state that during the evening of October 13, 1986, Rodney Williams was killed by a shotgun wound to the head. Pursuant to his investiga-

tion of this incident, Dwyer arrested defendant's son, Eugene Cooper, and also had several conversations with defendant. He would further testify that his investigation disclosed that the weapon used in the shooting was given to defendant on or about October 14, 1986, and that she then placed it in a safety deposit box over which she had control. On that same day he obtained a search warrant for the safety deposit box, from which he recovered the gun. An examination of the gun revealed that it was used to kill Rodney Williams. It was also stipulated that defendant failed to cooperate with the police in recovering the weapon.

Following the stipulation, the trial court entered its finding that defendant understood the nature of the charge against her and the possible penalties under law. It further found that defendant understood and knowingly waived her rights and that there was a sufficient factual basis to support defendant's guilty plea. The court then entered a final judgment on the guilty plea. After the parties indicated that there was nothing in aggravation or mitigation, the trial court sentenced defendant to one year's probation. The defendant at the time was represented by a public defender.

On July 7, 1989, a hearing was held on defendant's motion to withdraw her guilty plea. Defendant was represented by a second public defender at this hearing. Defendant testified that prior to the date on which she pleaded guilty she made two attempts to see the assistant public defender who was representing her in order to discuss her case. However, in each instance he told her that he could not talk to her until her court date. She stated that the first time that she talked to him about her case was outside of the courtroom on the date of her scheduled court appearance. She indicated that prior to her pleading guilty, her attorney never explained the charges against her and never discussed any evidence that the State intended to use. She also testified that on the date she pleaded guilty she was ill, suffering from high blood pressure and diabetes, and that she felt light-headed. On cross-examination, defendant denied meeting with her probation officer after pleading guilty and telling her that she wanted to withdraw her guilty plea because she was concerned that it would harm her son's pending defense against the murder charge. However, she did acknowledge that she had a conversation with her attorney about her case prior to pleading guilty, that the judge informed her of the pretrial conference, and that after the conference she pleaded guilty. She also testified that after pleading guilty, the judge explained the charges against her, the type of sentence that she could be given, and the rights that she was waiving by pleading guilty.

Jayne Mulcrone testified that she was defendant's probation officer. She stated that on March 9, 1987, she met with defendant and that defendant told her that she wanted to withdraw her guilty plea because she thought that it would be detrimental to her son's pending case.

In denying defendant's motion the court noted the following: (1) that the court personally recalled accepting defendant's guilty plea; (2) that the charges against defendant had been read to her and the possible penalties explained; (3) that she indicated to the court that she understood the charges and the penalties; (4) that she had been advised of the evidence the State would introduce if her case proceeded to trial; and (5) that she waived her right to a trial. After making these findings, the court concluded that defendant's plea was made knowingly and voluntarily.

We first consider defendant's claim that the stipulated facts do not provide a factual basis sufficient to support her guilty plea. She contends that because the stipulated facts failed to establish that she knew of the shooting or of the charges against her son at the time the gun was placed in the safety deposit box, the facts failed to offer proof of the requisite intent necessary to sustain the charge of obstructing justice. Defendant asserts that the facts were also insufficient because they failed to establish that defendant actually placed the gun in the safety deposit box or that she had sole control over the box. Defendant's arguments are unpersuasive. The state of mind or intent need not be proven by direct evidence, but can be inferred from the proof of surrounding circumstances. (*People v. Gray* (1986), 146 Ill. App. 3d 714, 717, 496 N.E.2d 1269; *People v. Shaw* (1978), 63 Ill. App. 3d 227, 379 N.E.2d 949.) In the instant case, the requisite intent can be inferred from three specific facts that were stipulated to by the parties; (1) Detective Dwyer had several conversations with defendant pursuant to his investigation of the shooting; (2) defendant was the mother of the suspect arrested by Detective Dwyer; and (3) just one day after the incident, the gun used in the shooting was found in a safety deposit box controlled by defendant. Furthermore, contrary to defendant's claim, the stipulated facts included a statement that the safety deposit box was under defendant's control. While the word "sole" was not used to characterize that control, we do not find that to be a sufficient basis to support defendant's claim when considered in the context of the other evidence stipulated to by the parties. Therefore, it is reasonable to infer from the proof of surrounding circumstances that defendant placed the gun in the safety deposit box with the intent of obstructing the prosecution of her son.

Moreover, in accepting a guilty plea the court's duty is only to assure itself that a factual basis for the plea exists, not to determine whether the defendant was proved guilty beyond a reasonable doubt. (*People v. Carter* (1988), 165 Ill. App. 3d 169, 172, 518 N.E.2d 1068.) Accordingly, we find that the stipulated facts provided a factual basis sufficient to support defendant's plea of guilty to the charge of obstructing justice.

Next, defendant claims that the trial court committed reversible error by denying her motion to withdraw her guilty plea because at the time she entered her plea she was ill, she did not understand the nature of the proceedings or the admonishment of the trial court, and she had not been properly advised by her attorney. To support this argument defendant refers to her testimony at the hearing on the motion to withdraw her plea, during which she stated that she did not understand what the judge was saying to her because she was frightened and ill from high blood pressure and diabetes. Moreover, prior to trial, defendant attempted to visit defense counsel on two occasions, but on each occasion she was told that he could not meet with her until the day of trial. On that day, defense counsel met with defendant for a few minutes before going into court, during which time he never discussed the evidence or the facts of the case with defendant. Therefore, defendant argues that her decision to plead guilty was not an intelligent decision.

■ The law provides that for a guilty plea to be constitutionally valid, the record must affirmatively show that the plea was intelligent and voluntary. (*People v. Turner* (1983), 111 Ill. App. 3d 358, 443 N.E.2d 1167.) This requirement is satisfied when the trial court substantially complies with Supreme Court Rule 402. (*People v. Turner*, 111 Ill. App. 3d 358, 443 N.E.2d 1167.) This rule provides that the trial court shall not accept a plea of guilty without first informing defendant of and determining that he understands the nature of the charge, the minimum and maximum sentence prescribed by law, that he had the right not to plead guilty, and that he is relinquishing certain rights by pleading guilty. (107 Ill. 2d R. 402(a).) The court must also determine that the plea is voluntary and that there is a factual basis for the plea. (107 Ill. 2d R. 402.) Generally, substantial compliance with Supreme Court Rule 402 indicates that the plea was intelligent and voluntary. *People v. Turner*, 111 Ill. App. 3d 358, 443 N.E.2d 1167.

■ A review of the record in the instant case indicates that the trial court substantially complied with Supreme Court Rule 402. Before accepting defendant's guilty plea, the trial court read the charges

against defendant after which she responded that that was the charge to which she was pleading guilty. The court then explained sentencing and the legal rights that defendant was waiving by pleading guilty. Defendant responded that she understood. Upon further inquiry by the court, she also indicated that she was so pleading of her own free will, under no coercion or threat. The court then read the stipulation of facts, with no objection by defendant. After finding that defendant understood the nature of the charges against her and possible penalties, that she understood and waived her legal rights and that there was a sufficient factual basis to support the guilty plea, the court entered a final judgment on the plea. The record does not support defendant's claim that her plea was not made intelligently and voluntarily. The fact that she may have been frightened at the time she pleaded guilty has no bearing on the matter. It is perfectly clear from the record that before the court accepted her plea she was properly admonished and that she freely and voluntarily pleaded guilty with a full understanding of her rights and the consequences of her waiver thereof. Moreover, a review of the record does not indicate that defendant's ability to freely and voluntarily plead guilty was in any way affected by her alleged medical condition.

■ We also reject defendant's claim that the trial court's acceptance of the plea was improper because she was denied effective assistance of counsel prior to pleading guilty. Essentially, defendant argues that because defense counsel only met with her for a few minutes just prior to the court proceedings and that during this meeting defense counsel did not discuss with her the State's evidence or the facts of the case, she was uninformed and therefore unable to render an intelligent guilty plea. We disagree. The fact that defense counsel first met with defendant just prior to the court proceedings does not necessarily mean that she was uninformed at the time she pleaded guilty. Moreover, the record discloses that immediately after the pretrial conference, defense counsel again met with defendant to discuss the results of the conference. The record also discloses that the trial court thoroughly admonished defendant, and she clearly and unequivocally communicated to the court that she understood the proceedings and the ramifications of her guilty plea.

■ Finally, in considering defendant's claim we are guided by the general rule that the decision of whether to allow a defendant to withdraw a guilty plea is within the sound discretion of the trial court, and its decision will not be disturbed unless it appears that the plea was entered through a misapprehension of the facts or the law, that defendant has a defense worthy of consideration, or that there is

doubt of the guilt of the accused and the ends of justice would be better served by submitting the case to a trial. (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 521 N.E.2d 900; *People v. Pirt* (1987), 164 Ill. App. 3d 379, 517 N.E.2d 1172.) In the instant case, defendant does not allege and the record does not in any way suggest that any of those circumstances existed to warrant reversing the trial court's denial of defendant's motion to withdraw.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. "In *Winship* [*In re Winship* (1969), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072], the Court held for the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,' " and, "[*W*]*inship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of *the existence of every element of the offense.*" (Emphasis added.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 315-16, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2787.) The defendant in the case at bar has been denied constitutional due process because she stands convicted of an offense of which every fact necessary to constitute the crime with which she was charged was not established. The defendant in the case at bar has been denied constitutional due process because she has been made to suffer the onus of a criminal conviction when there was no proof of the existence of every element of the offense. The Supreme Court further stated in *Jackson v. Virginia*, "We held in the *Thompson [v. Louisville* (1960), 362 U.S. 199, 4 L. Ed. 2d 654, 80 S. Ct. 624] case that *a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm.*" (Emphasis added.) (443 U.S. at 314, 61 L. Ed. 2d at 571, 99 S. Ct. at 2786.) This defendant's conviction is based upon a record wholly devoid of the facts of crucial elements of the offense charged, and her conviction is therefore likewise constitutionally infirm. Ac-

cordingly reversal of her conviction is demanded.

The statute that the defendant was alleged to have violated, section 31—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 31—4(a)), provides as follows:

"A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he *knowingly* commits any of the following acts:

(a) Destroys, alters, *conceals* or disguises *physical evidence* \*\*\*." (Emphasis added.)

The essential ingredients of obstructing justice under this statute, relevant to the case at bar, are (1) an offense has been committed, (2) of which the obstruction of justice perpetrator has knowledge, (3) intends to obstruct the prosecution of the offender by and (4) *knowingly* concealing *physical evidence* used by the offender in the commission of the offense. Under the statute, an obstructionist must have *knowledge* that the item he conceals is *physical evidence* that has been used in the commission of an offense and the obstructionist conceals it with the intent to obstruct the prosecution of the person who committed the offense. In the context of the instant case, the item would have to have been used in the commission of the offense in order for the item to be *evidence*, and the obstructionist must have had knowledge that the item is evidence in order for him to have the requisite intent in concealing it to obstruct the prosecution of the person who committed the offense.

The indictment in the case at bar did not allege that the defendant knowingly concealed the weapon used in the homicide of the deceased, Rodney Williams, and thus, the indictment fatally failed to allege an essential ingredient of the obstruction of justice offense. The indictment is therefore void.

The one-count indictment in the instant cause alleged "that on or about October 4, 1986 at and within the County of Cook Josephine Cooper committed the offense of obstructing justice in that she, with intent to obstruct the prosecution of one Eugene Cooper for the alleged shooting and killing of one Rodney Williams, did *conceal physical evidence, to wit: after the killing she did conceal the weapon used in the shooting and killing*, in violation of Chapter 38, Section 31—4(a) of the Illinois Revised Statutes 1985." (Emphasis added.)

The indictment failed to allege the commission of an obstruction of justice offense under the statute. As previously stated, the statute provides that "a person obstructs justice when \*\*\* he *knowingly* \*\*\* conceals \*\*\* *physical evidence*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 31—4(a).) The indictment in the case at bar fatally

failed to allege that the defendant *knowingly* concealed the weapon (*physical evidence*) used in the shooting. The indictment simply alleged that she "*did conceal physical evidence, to wit: after the killing she did conceal the weapon used in the shooting and killing.*" (Emphasis added.) If the defendant concealed the weapon without knowledge that it had been used in the homicide, she would not have committed an obstructing of justice offense. *A fortiori*, where the indictment failed to allege that the defendant concealed the weapon knowing that it had been used in the homicide, the indictment failed to allege the commission of an offense under the obstruction of justice statute. It is additionally noteworthy, on which I hereinafter further comment, that the indictment did not otherwise identify or specify "*the weapon* used in the shooting."

The Supreme Court of the United States held in *Jackson v. Virginia* that "[i]t is axiomatic that a conviction upon a charge not made *** constitutes a denial of due process." (*Jackson*, 443 U.S. at 314, 61 L. Ed. 2d at 570, 99 S. Ct. at 2786.) Our supreme court held in *People v. Wallace* (1974), 57 Ill. 2d 285, 288:

> "It is well settled that an indictment which fails to charge a criminal offense is void. [Citation.] As such, it does not confer jurisdiction upon a court [citation], and a conviction resulting therefrom may not be sustained [citations]. A convicted defendant may challenge the validity of an indictment for failure to allege a criminal violation either by direct review or in collateral proceedings."

In *People v. Lutz* (1978), 73 Ill. 2d 204, count I of the indictment alleged that the defendant committed aggravated battery with a deadly weapon, but because the indictment did not allege that the defendant caused bodily harm or made an insulting or provocative physical contact upon the victim, the supreme court held that the count was fatally defective for failure to allege an essential ingredient of an aggravated battery offense. Count II of the indictment in *Lutz* also alleged an aggravated battery knowing the victim was a peace officer, but again, because the indictment failed to allege bodily harm to the victim, the supreme court held that count II likewise did not allege an aggravated battery offense. The court concluded in *Lutz*:

> " 'It is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every paragraph, sentence, phrase and word. [Citation.] A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous. ***' [Citation.] 'In construing a

statute where the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary.' [Citation.] 'By well settled principles of law, a criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes. ***' " 73 Ill. 2d at 212-13.

Because the indictment in the instant case did not allege that the defendant knowingly concealed the weapon used in the homicide, the indictment failed to allege an essential ingredient of the offense of obstructing justice and reversal is therefore required.

Likewise, and for that reason just as fatal, no facts were presented to the trial court on the guilty plea proceedings that the defendant knowingly concealed the weapon that had been used in the homicide. Moreover, as hereinafter pointed out, there were other essential factual elements of the obstruction of justice offense which were not factually established or presented at the guilty plea proceedings. Accordingly, the guilty plea and judgment thereon cannot validly stand.

When the cause came on before the trial court on February 2, 1987, the defendant's attorney stated to the trial court that "Josephine Cooper wishes to withdraw her previously entered plea of not guilty and enter a plea of guilty to the charge of obstructing justice." Thereupon, the trial court read to the defendant the fatally defective obstruction of justice allegations of the indictment, as previously set forth herein. The trial judge did not advise the defendant that she was charged with knowingly concealing the weapon used in the shooting. The indictment did not so allege. She was merely informed that she was charged with concealing the weapon that had been used in the shooting, which she could have done, and very well may have done, without knowledge that it had been used in the shooting and to which she was pleading guilty. But in that event, she would not have committed an offense under the obstructing of justice statute. As read to her by the trial court, the defendant stated that she understood the charge against her and wished to plead guilty thereto. But a legal prerequisite to the trial court's acceptance of a plea of guilty is a presentment to the trial court a factual basis for every essential ingredient of the offense.

Supreme Court Rule 402(c) (107 Ill. 2d R. 402(c)) provides:

"In hearings on pleas of guilty, there must be substantial

compliance with the following:
* * *

The court *shall* not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." (Emphasis added.)

Pursuant to the mandate of Supreme Court Rule 402(c) and the aforestated constitutional due process mandates of *Winship, Jackson v. Virginia,* etc., the trial court directed and the prosecutor stated the factual basis for the plea as follows, which I set forth verbatim, rather than in summary form, for completeness and accuracy:

"THE COURT: Statement of facts.

MR. REILLY [assistant State's Attorney]: The parties would be proceeding by way of stipulation through the State's Attorney, by Assistant State's Attorney James Reilly, and the Defendant, Ms. Josephine Cooper, through her attorney, Mr. Ron Grenda.

The parties would so stipulate that if called to testify, Detective Robert Dwyer, from the Chicago Police Department Area 2 Violent Crimes, were called to testify, he would testify that on October 13th of 1986, shortly before midnight, Mr. Rodney Williams was murdered at an apartment on 1376 West 79th Street. He would testify that *he was killed by a shotgun wound to the cranium*

He would further testify that during the course of his investigation, he had an opportunity to arrest one Eugene Cooper, the son of Mrs. Josephine Cooper. He would further testify that he had numerous conversations with Mrs. Josephine Cooper, whom he would identify here in open court, along with one Aaron Cooper, another son of the Defendant in this case.

He would testify *his conversation disclosed that the weapon used in the homicide of Mr. Rodney Williams was given to Mrs. Josephine Cooper,* on or about the 14th of October, placed in a safety deposit box that Mrs. Josephine Cooper had control over. He would testify that he subsequently obtained a search warrant for the search of that safety deposit box on the 14th of October, 1986.

He would further testify that he went to the safety deposit box, controlled by Mrs. Josephine Cooper, on October 14th of 1986, and went to that bank located at 200 East Randolph in Chicago, Cook County, Illinois. He would further testify that *he subsequently recovered the handgun from the safety deposit box,* along with several other handguns.

It would be stipulated that *one of the handguns recovered from the safety deposit box was, in fact, the weapon used in the homicide of Mr. Rodney Williams.*

After that weapon was submitted to the Chicago Police Department Firearms, where it was examined by Fire Examiner Donald Smith and was found to be the same weapon that was used to kill Rodney Williams, on or about the 13th of October, 1986.

It would be stipulated that the Defendant failed to cooperate with the police in recovering that weapon and was recovered after the police department obtained a search warrant for the recovery of that weapon at the Bank of Commerce." (Emphasis added.)

Thereupon, the trial court stated that it *"finds that there is a sufficient factual basis to the plea of guilty,* and accordingly, on the charge of obstructing justice, plea of guilty, jury waived, finding of guilty, judgment entered on the finding." (Emphasis added.) The trial court imposed a sentence of one year's felony probation.

The defendant rightly contends before this court that there was no sufficient factual basis presented to the trial court for the plea of guilty to the offense of obstructing justice and that the trial court erred in entering judgment and sentence on the plea and in denying her motion to withdraw or vacate the guilty plea. The facts presented on the stipulation demands agreement with the defendant's contentions.

The stipulated facts were that Rodney Williams, the deceased, *"was killed by a shotgun wound to the cranium."* (Emphasis added.) It was additionally stipulated that during his investigation, Detective Robert Dwyer arrested "Eugene Cooper, the son of Mrs. Josephine Cooper." The stipulated facts do not disclose for what reason Dwyer arrested Eugene Cooper. The stipulated facts do not reveal that Eugene Cooper was arrested for or charged with the murder of Rodney Williams, or with obstructing justice for his concealment of the murder weapon. There is not a single fact in the stipulation that Eugene Cooper was in any way involved in the Rodney Williams homicide, or that Eugene Cooper even had any knowledge of the facts of the Rodney Williams killing, or that Eugene Cooper even knew that Rodney Williams had been killed.

The initial stipulated facts were that Rodney Williams was killed by *"a shotgun wound"* to his head. (Emphasis added.) Subsequent stipulated facts were that Detective Dwyer's *"investigation disclosed that the weapon in the homicide of Mr. Rodney Williams was given to*

*Mrs. Josephine Cooper* on or about the 14th of October, placed .in a safety deposit box that Mrs. Josephine Cooper had control over." (Emphasis added.) One would reasonably assume that the *WEAPON* referred to, used in the Rodney Williams killing and given to Mrs. Josephine Cooper, was the previously referred to *SHOTGUN*, which inflicted the FATAL wound to the victim's cranium, which, it was stipulated, killed Rodney Williams.

There is no fact in the stipulation that Mrs. Cooper knew that the *WEAPON* given to her had been used in the homicide of Rodney Williams, the deceased. There is no fact in the stipulation that Mrs. Cooper even knew that the deceased had been killed. There is no fact in the stipulation that Mrs. Cooper had any knowledge that her son, Eugene Cooper, was in any way involved in the Rodney Williams homicide, if indeed he was involved. Moreover, there isn't any fact in the stipulation that Mrs. Cooper even knew that her son had been arrested, and thus, for what reason he had been arrested. Furthermore, there is no fact in the stipulation identifying the person who gave "the *WEAPON* used in the homicide" to Mrs. Cooper, or any fact or circumstance surrounding her receiving it, or that the person who gave Mrs. Cooper the *WEAPON* was involved in or had any knowledge of the Williams shooting.

The stipulated facts do not state that Mrs. Cooper placed the weapon in the safety deposit box, or who placed the weapon in the safety deposit box. Nor do the stipulated facts state that Mrs. Cooper had exclusive control over the safety deposit box or that no one else had access to the safety deposit box but Mrs. Cooper. There are no facts in the stipulated facts from which any of the before mentioned absent facts may be rationally inferred.

The facts were further stipulated that in execution of a search warrant Detective Dwyer *"recovered the handgun from the safety deposit box, along with several other handguns,"* and *"that one of the handguns recovered from the safety deposit box was, in fact, the weapon used in the homicide of Mr. Rodney Williams,"* and *"that weapon* was submitted to the Chicago Police Department Firearms, where it was examined by Fire Examiner Donald Smith and was found to be the same weapon that was used to kill Rodney Williams ***."* (Emphasis added.)

As previously noted, the stipulation initially stated that the deceased "was killed by a *shotgun* blast to the cranium" (emphasis added), and immediately thereafter, it was stipulated, the *WEAPON* used in the killing was given to Mrs. Cooper and was placed in a safety deposit box. But the stipulation of facts subsequently and con-

versely stated, however, that *HANDGUNS* were recovered from the safety deposit box and that one of the *HANDGUNS* recovered from the safety deposit box was the weapon used in the homicide of the deceased. A handgun and a shotgun are not the same.

The stipulated fact that the deceased "was killed by a *shotgun* blast to the cranium" cannot be reconciled with the subsequent stipulated fact that "one of the *handguns* recovered from the safety deposit box was in fact the weapon used in the homicide of Mr. Rodney Williams." (Emphasis added.)

From the stipulated facts it cannot be discerned whether Mrs. Cooper was given a *SHOTGUN* or a *HANDGUN*. From the stipulated facts it cannot be discerned whether a shotgun or a handgun was the fatal weapon. The stipulated facts do not reveal that a shotgun was discovered in or retrieved from the safety deposit box. Moreover and again, no fact was presented that Mrs. Cooper knew that either a shotgun or a handgun had been used to kill the deceased, or that the deceased had even been killed. Likewise, and again, no fact was presented that Mrs. Cooper placed either the shotgun or the handgun in the safety deposit box. The defendant convincingly argues it is these foregoing glaring contradictions in the stipulated facts, that a *SHOTGUN*, a *HANDGUN* and the *WEAPON* were used in the killing, that made it impossible for the indictment to properly allege the identity and specificity of the weapon that the defendant allegedly concealed.

The stipulated facts failed to establish a factual basis for the guilty plea. The stipulated facts do not establish a violation of the obstruction of justice statute that the defendant was alleged to have violated.

Just as the indictment in the instant case is fatally defective because it failed to allege a requisite factual ingredient of the offense, *i.e.*, that the defendant knowingly concealed the homicide weapon, the stipulated facts are likewise fatally inadequate because there is no fact establishing that the defendant knowingly concealed the homicide weapon, or, for that matter, that she even concealed the homicide weapon, knowingly or unknowingly. The stipulated facts are grossly incomplete and do not establish the offense charged. There was no factual basis for the plea, as required by Supreme Court Rule 402(c) and *Winship* and *Jackson v. Virginia, et al.*

The mandate of Rule 402(c) that there be a factual basis for the plea is not a mere cursory or perfunctory requirement. The rule demands more than a trial court merely rubber stamp a prosecutor's advocations and deficiencies. The Rule 402(c) mandate is one of serious and solemn magnitude. It is a command of constitutional due process

dimensions.

In *In re Winship* (1970), 397 U.S. 358, 359, 25 L. Ed. 2d 368, 372, 90 S. Ct. 1068, 1070, the issue presented was "whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." In *Winship*, the juvenile was adjudged a delinquent based upon a preponderance of the evidence of his commission of a theft, which "if done by an adult, would constitute the crime of larceny" and would require proof beyond a reasonable doubt as a prerequisite for a finding of guilty The Supreme Court reversed, in language so magnanimous, I hereafter extensively quote:

> "The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of *All essential elements* of guilt.' ***
>
> Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. [Citations.] *** 'It is the duty of the Government to establish *** guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of "due process." ' [Citations.] *** 'Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property ***.' '[H]e *** is entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime. *** No man should be deprived of life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them *** is sufficient to show beyond

a reasonable doubt *the existence of every fact necessary to constitute the crime charged.'* [Citation.]

The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for *reducing the risk of convictions resting on factual error.* The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' \*\*\*

The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good names and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. \*\*\* 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of \*\*\* convincing the factfinder of is guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' [Citation.]

Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is. also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.

*Lest there remain any doubt about the* constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime with which he is charged."* (Emphasis added.) 397 U.S. at 361, 362-64, 25 L. Ed. 2d at 373-74, 374-75, 90 S. Ct. at 1071, 1071-73.

The foregoing language of *Winship* is intrinsically applicable to

the case at bar. The *"all essential elements"* and *"every fact necessary to constitute the crime with which [she] is charged"* were not established. (Emphasis added.) Reversal is commanded.

*Jackson v. Virginia* (1979), 443 U.S. 308, 61 L. Ed. 2d 560, 99 S. Ct. 2781, was a Federal *habeas corpus* proceeding in which the defendant challenged the sufficiency of the evidence to establish premeditation in his State court conviction for murder. The Supreme Court stated that "[t]he constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt [*In re Winship*, 397 U.S 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068]." And, that "the due process standard recognized in *Winship* constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that *every element of the crime has been established* beyond a reasonable doubt." (Emphasis added.) (*Jackson*, 443 U.S. at 309, 313-14, 61 L. Ed. 2d at 566, 570, 99 S. Ct. at 2783, 2786.) The Supreme Court concluded in *Jackson v. Virginia*:

> "In *Winship*, the Court held or the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of *every fact necessary to constitute the crime with which he is charged.*'" (Emphasis added.) 443 U.S. at 315, 61 L. Ed. 2d at 571, 99 S. Ct. at 2787.

The majority in the case at bar adroitly circumvents the absence of a factual basis for the guilty plea by erroneously embellishing the lack of a factual basis into the lucid arena of the defendant's intent, and then mistakenly infers intent for fact. The inadequate stipulated facts do not present the issue of the defendant's intent. Rather, the insufficient stipulated facts fail to establish not only intent, but also that the crime of obstructing justice was ever committed. There was no factual basis for the plea and thus there was no proof of the commission of the offense charged.

*People v. Carter* (1988), 165 Ill. App. 3d 169, 518 N.E.2d 1068, in which the sentence was reversed and upon which the majority mistakenly relies is not in point. *Carter* involved a revocation of probation hearing based upon a probation revocation petition which erroneously alleged that the defendant violated his probation by the commission of a theft on June 3, when the theft, the commission of which was undisputed, was actually committed on June 23. The *Carter* court noted that the defendant admitted the allegations of the revocation petition and stated that *"[t]he relevant issues are whether the crime charged has been committed and whether defendant committed it."* (Emphasis

added.) (165 Ill. App. 3d at 173.) Likewise, in the instant case, the relevant issue is that the stipulated facts do not establish that an offense of obstructing justice was committed. Moreover, as stated, an offense of obstructing justice was not alleged. This being so, it naturally follows that the factual stipulation to the facts alleged in the indictment could not establish that the defendant committed a crime, and the factual stipulation did not establish that a crime was committed.

In *People v. Petrovich* (1979), 77 Ill. App. 3d 737, 396 N.E.2d 629, the defendant pled guilty to aggravated kidnapping of a minor and was sentenced to eight years' imprisonment. On his appeal he prayed that his guilty plea, conviction and sentence be vacated and the cause remanded with directions to allow him to plead anew. He contended that although his statements during his guilty plea proceedings established his commission of the offense, his statements likewise showed that he was forced, out of fear, to participate in the offense by the codefendant. The *Petrovich* court agreed, granted the defendant's motion to withdraw his guilty plea, reversed the defendant's conviction and remanded the cause for trial, stating: "The defendant's primary contention on the merits is that his statement of facts concerning the instant offense at the time he pled guilty not only established the elements of the offense but also established his valid and substantial defenses of compulsion and necessity and, therefore, his plea should not have been accepted, but he should have been tried so that the question of fact raised by his statement could have been resolved.

We take note of the fact that since we are also considering the merits of a motion to withdraw a guilty plea, we are also held to the standards of discretion which would apply to a trial court. [Citation.] In applying those factors, we are of the opinion that the defendant here has shown in his statement at the guilty plea proceeding that he has, at the very least, a defense worthy of consideration by a finder of fact and, furthermore, that *the ends of justice would be better served by a trial on the merits in this case.*" (Emphasis added.) 77 Ill. App. 3d at 739.

In the case at bar, the ends of justice would also be better served by a trial on the merits, for no better reason than to determine whether the crime of obstructing justice was in fact committed. After all, according to the stipulated facts before us, the defendant herein, Mrs. Josephine Cooper, is the mother of Eugene Cooper. According to the allegations of the indictment, but which are not facts of guilt, Mrs. Cooper intended "to obstruct the prosecution of [her son] Eugene Cooper for the alleged shooting and killing of one Rodney Williams."

In *People v. Kifer* (1979), 75 Ill. App. 3d 202, 393 N.E.2d 1080,

the defendant was sentenced to six months' imprisonment on his guilty plea to a battery upon his sister. In reversing the defendant's conviction, the court stated that "the defendant admitted striking his sister, but denied striking her in the manner charged in the information. In addition, he stated that he hit his sister after intense provocation. If his statement is true, we find it hard to perceive how any jury or court sitting without a jury would find the defendant guilty." (75 Ill. App. 3d at 207.) In the case at bar it is impossible to perceive that a jury or any court sitting without a jury could find the defendant guilty on the stipulated facts, even if the stipulated facts were proven beyond a reasonable doubt. It would be legally impermissible for a judge or jury to find a defendant guilty on the facts as stipulated. The essential elements of the crime were not established.

Finally, in *People v. Edmonds* (1973), 15 Ill. App. 3d 1073, 305 N.E.2d 346, the defendant pled guilty to voluntary manslaughter and was sentenced to an indeterminate imprisonment sentence of 1 to 10 years. On appeal she contended that there was no factual basis for the guilty plea. The evidence heard by the trial court was that the defendant shot and killed the deceased, who was beating her. In remanding the case "to the trial court *** with directions to permit the defendant to plead anew," the court held that Rule 402(c) mandates that "the judge should determine prior to entering final judgment that the conduct of the defendant is sufficient to sustain the charge to which the defendant pleads guilty." (15 Ill. App. 3d at 1079.) In the instant cause, the conduct of the defendant set forth in the stipulated facts does not sustain the charge and establish every essential ingredient of obstructing justice, to which the defendant pled guilty.

Although facts may not be required to be proven beyond a reasonable doubt in a guilty plea proceeding (*People v. Carter* (1988), 165 Ill. App. 3d 169, 172, 518 N.E.2d 1068), nevertheless, constitutional due process requires that adequate facts, a factual basis, be presented which establish that an offense was committed and every essential ingredient of the commission of that offense.

For the foregoing reasons, the defendant's conviction should be reversed. Accordingly, I dissent.