No. 3–09–0043

Opinion filed April 5, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 08–CM–1080 |
| | ) ) | |
| KEVIN GORDON, | ) ) | Honorable James E. Egan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Schmidt specially concurred, with opinion.
Justice McDade dissented, with opinion.

**OPINION**

On February 28, 2008, police officers issued defendant a citation for failure to wear a seat

belt as a passenger, arrested another passenger for possession of marijuana, and issued various

traffic citations to the driver of the vehicle. After receiving his seat belt ticket, defendant began

yelling at and threatening the police officers. Police officers repeatedly ordered defendant to leave the scene and arrested him for obstructing a peace officer when he failed to comply with the officers' directives. The court found defendant guilty of the Class A misdemeanor charge of obstructing a peace officer and defendant appeals the court's ruling. We affirm.

BACKGROUND

On February 28, 2008, defendant occupied the front passenger seat in a vehicle stopped by Joliet police officers for improper lane usage and failure to signal. The officers issued citations to the driver and also issued a citation to defendant for failure to wear his seat belt. Additionally, the officers arrested a passenger in the rear seat for unlawful possession of cannabis. Eventually, after defendant and another occupant of the vehicle refused to leave the scene after the officers repeatedly ordered them to do so, the police also arrested defendant and the other individual for obstructing a peace officer, a Class A misdemeanor.

In an amended complaint, the State alleged that, on February 28, 2008, "defendant knowingly obstructed the performance of Jeffrey German of an authorized act within his official capacity, being the investigation of [defendant], knowing Jeffrey German to be a peace officer engaged in the execution of his official duties, in that he refused to exit the vehicle after being ordered to do so and failed to disperse from the scene after being ordered to do so." The court appointed the public defender to represent defendant. After defendant waived his right to a jury trial, the court held a bench trial on November 21, 2008.

The State's first witness, Officer Jeffrey German, testified that he was employed by the Joliet police department on February 28, 2008, and was on duty that date. Officer German stated that he and other officers conducted a traffic stop on the vehicle in which defendant was a

2

passenger on that date. Officer German and the other officers were dressed in "plain clothes" at that time, but they were wearing their "black tactical vests" with police writing on the front and back, as well as wearing their duty belts bearing their badges. According to Officer German, they also identified themselves as police officers at the time of the traffic stop.

The officer stated that, when they stopped the driver of vehicle for improper lane usage and failure to signal a turn, they observed defendant was not wearing his seat belt as the front seat passenger. Officer German asked defendant to state his name, but defendant remained silent. After several requests for defendant's name and identification, to no avail, the officers asked all of the occupants to exit the vehicle. At that point, Officer German testified that they arrested the rear seat passenger for unlawful possession of cannabis. While waiting for the arrival of a tow truck, the officers ordered the remaining individuals, including defendant, to reenter their vehicle. Officer German said that officers in two marked squads also came to the scene to assist the plain clothes officers.

Officer German testified that the officers decided that the other occupants of the vehicle should leave the scene rather than wait for the tow truck. After the officers told the other occupants to disperse, Officer German said defendant did not leave the area. According to Officer German, between himself and three other officers, they ordered defendant and the other occupants to leave the area "10, 15 times *** at which time they were being very irate, yelling profanities at us, [and] threatening us." Officer German testified that defendant said, "If you weren't a badge, we would beat your ass." Defendant then walked to another vehicle, driven by the mother of one of the occupants of the stopped vehicle, who came to the scene to give the occupants a ride home.

3

Defendant and another passenger reapproached the stopped vehicle while the officers were searching the vehicle, and both yelled at and said profanities to the officers, telling them to "F*** off." Officer German and the other police officers repeatedly ordered defendant and the other passenger to leave the area and they both refused and continued yelling profanities at the officers.

On crossexamination, Officer German said defendant initially did not get out of the stopped car when he was ordered to exit the vehicle, nor did defendant initially tell the officers his name upon request, but he eventually complied with both directives from the officer. Officer German patted defendant down for weapons and issued defendant a citation for failure to wear his seat belt. After the officers arrested the rear seat passenger and requested a tow truck for the vehicle, the officers had the remaining occupants wait in the vehicle. According to Officer German, as they were getting ready to tow the stopped vehicle, the mother of one of the occupants, Mr. White, came to the scene to transport the occupants home, and they were told to leave the scene. Officer German stated that, between the other officers and him, the occupants were repeatedly told 5 to 10 times to leave the area.

Officer Arthur Arellano next testified that he worked for Joliet police department on February 28, 2008, and he was present at the traffic stop involving defendant. Defendant and two other individuals were sitting outside of the car when he arrived at the scene and other police officers were searching the vehicle in which defendant had been riding. After the officers finished searching the vehicle, the officers told defendant and the other occupants to get back into the vehicle. After being told to exit the vehicle again, defendant and the others remained in the street near the stop. Officer Arellano testified that defendant was told to get out of the street and leave

4

the scene several times and did not comply with that order. Arellano said defendant was agitated and yelling when they told him to disperse or leave the area. Specifically, the officer said defendant stood in the street and yelled profanities at the police officers. Officer Arellano said he personally told defendant to leave the scene "at least ten times." According to the officer, he was acting in his official capacity as a police officer when he told defendant to disperse. Arellano testified that defendant did not comply with the officers' orders to leave, so they arrested him for obstructing a peace officer.

Ryan Montello, another Joliet police officer working on February 28, 2008, was the next witness to testify. Officer Montello said he reported to the scene of the traffic stop involving defendant. He testified that he did not have an exact number, but he personally heard the police officers tell defendant to leave the scene that evening "more than five times." Officer Montello said that he did not see and hear everything that evening because he "was basically baby-sitting the other subject that was arrested that was trying to escape from the squad car at that time." Officer Montello stated that both he and Officer German told defendant to disperse several times and defendant did not comply. As a result, Officer Montello testified that defendant was arrested.

Defendant testified that he was a passenger in the vehicle that was stopped by the police officers on February 28, 2008. He said, when Officer German approached, he rolled down his window. Defendant stated that he told the officer his name when it was requested. After a few minutes, defendant said the officers told them to step out of the car. Officer German patted defendant down when he got out of the car and told defendant to step to the back of the car. Defendant testified that, while he was being patted down, other officers arrested the rear passenger of the vehicle. Defendant said the rear passenger "was given [*sic*] the officers a bad

5

time, rough time, so they was really pretty much watching him the whole time."

Defendant explained, as the police searched the vehicle, he stood in the street. The police then told him to move to the sidewalk, and defendant said he complied. Defendant testified that one of the other passengers "gave the police a hard time." According to defendant, the driver then also started giving the police a hard time, asking the officers why he was pulled over and other questions. Defendant said he stood on the sidewalk and "minded his own business" and "did not say a word." Defendant stated that the driver of the stopped vehicle, Mr. White's mother, and another passenger of the vehicle all had verbal confrontations with the police officers. Defendant said the police then arrested Mr. White for "obstructing." Subsequently, an officer approached defendant and asked him to leave. Defendant testified that he told the officer that he was waiting for Mr. White's mother and the officer said, "Okay," and then walked away. Defendant stated he remained standing on the sidewalk and another officer asked him to leave the scene. Defendant said he told that officer, "Yeah, I am trying to leave the scene now. I am waiting on Mr. White's mother." Defendant said the police officer than told defendant he was under arrest for obstructing the police. Defendant stated that he asked the police officers why he was being arrested since he was just standing there and not doing anything wrong. Defendant testified that he was only asked to leave two times before being arrested. On crossexamination, defendant reiterated that he was told to leave the scene two times and he did not leave the scene because he was waiting for Mr. White's mother.

Both parties rested after defendant testified. After closing arguments, the court found that defendant was not guilty of obstructing the police officers under the first alternative in the complaint which alleged that defendant refused to exit the vehicle after being directed to do so.

6

The court then addressed the other allegation in the complaint regarding defendant refusing to leave the scene. The court stated it did not find defendant to be a credible witness. The court noted that all of the officers testified that defendant refused to cooperate and argued with the police, and the court found defendant's testimony incredible that Mr. White, his mother, and the other passenger were all arguing with the police and he said nothing and totally cooperated with the officers.

The trial judge stated that, even by defendant's own testimony, defendant did not leave when the officers directed him to do so, telling the officers that he would leave but he was waiting for Mrs. White. The court then found that defendant was ordered to leave the scene and he refused. The court took the case under advisement and gave the attorneys the opportunity to present case law to the court to support their arguments.

On December 12, 2008, the court announced its ruling after reviewing case law submitted by counsel. The court quoted the language in *People v. Synnott*, 349 Ill. App. 3d 223 (2004), a case cited by the State, and found that, although there was no physical act by defendant in the case at bar, defendant was ordered to exit the car and he did not immediately exit the vehicle. The court found that defendant was then "ordered 15 times to disburse [*sic*]. He did not disburse [*sic*]." The court stated:

> "I'm finding that I think this is enough, even though he did not take a physical act. And I may be incorrect, but I'm thinking refusing to obey the officer's instructions after getting out of the car and after staying in the area and 15 times, it could have developed into a much worse situation. I'm gonna find him guilty of the resisting."

The court sentenced defendant, on January 9, 2009, to one year of conditional discharge,

7

44 days in jail, and other fines and costs. Defendant filed a timely appeal.

## ANALYSIS

On appeal, defendant argues that his failure "to leave the scene of the traffic stop although the police repeatedly ordered him to leave" as charged does not constitute a violation of the obstructing a peace officer statute. The State contends that the evidence presented was sufficient to prove defendant guilty of obstructing a peace officer beyond a reasonable doubt.

First, the parties dispute the applicable standard of review. Defendant suggests that the facts are uncontested and this court must construe the meaning of the statute as it applies to the undisputed facts under the rationale of *People v. Smith*, 191 Ill. 2d 408, 411 (2000). In the instant case, the record shows that many of the material facts are disputed by the defendant; therefore, defendant is actually challenging the sufficiency of the evidence to find defendant guilty of the charged offense. Consequently, the applicable standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution. *People v. Collins,* 106 Ill. 2d 237, 261 (1985); *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008).

Section 31-1(a) of the Criminal Code of 1961 (Code) provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity***." 720 ILCS 5/31-1(a) (2008).

In the instant case, defendant does not dispute that the officers were performing authorized acts within their official capacities. Therefore, the sole issue on review is whether defendant's actions, involving his refusal to disperse or leave the scene after being ordered to do

8

so, impeded the officers' performance of their official duties at the scene in this case. Defendant relies heavily on *People v. Raby,* 40 Ill. 2d 392 (1968), and *People v. Stoudt,* 198 Ill. App. 3d 124 (1990), to support his position that the State had to allege and then prove physical acts by defendant against a police officer to support a conviction for resisting or obstructing a peace officer. It should be noted that the State has only alleged in its complaint that defendant obstructed a peace officer, not that he resisted the officers. In *Raby*, our supreme court defined obstruct as " 'to be or come in the way of.' " *Raby*, 40 Ill. 2d at 399 (quoting *Landry v. Daley*, 280 F. Supp. 938, 959 (N.D. Ill. 1968)).

The defense relies on the Second District *Stoudt* case which, like *Raby*, did not involve a charge of obstructing an officer but was predicated on the allegation that the defendant in that case *resisted* a peace officer. *Stoudt*, 198 Ill. App. 3d at 127-28. In *Stoudt*, the court held the charging document was deficient because the State did not allege an act of physical *resistance* performed by that defendant. *Stoudt,* 198 Ill. App. 3d at 128. However, in *People v. Synnott*, 349 Ill. App. 3d at 227, the Second District distinguished the facts in *Stoudt*, which were based on a resisting charge, and recognized that section 31-1(a) of the Code could also include "a failure or omission to take action" (720 ILCS 5/2-2 (West 2002)) as constituting an "act" under the *obstructing* a peace officer alternative, and that this interpretation was consistent with the *Raby* court's definition of obstruct meaning "to be or come in the way of " the police officer's duties. (Emphasis omitted.) (Internal quotation marks omitted.) *Synnott*, 349 Ill. App. 3d at 227 (quoting *Raby,* 40 Ill. 2d at 399). The *Synnott* court held that inaction, such as refusing a police officer's lawful order to move out of the way, can constitute interference with the officer in the discharge of his or her duties. *Synnott*, 349 Ill. App. 3d at 227 (citing *City of Chicago v. Meyer,*

9

44 Ill. 2d 1, 6 (1969)). In the *Meyer* case, our supreme court held that defendants were guilty of obstructing a peace officer when war protesters and supporters refused to move after being told to disperse by the police when the police were unable to maintain order among opposing factions. *Meyer,* 44 Ill. 2d at 6.

It is ultimately for the trier of fact, on a case-by-case basis, to determine if a defendant's conduct obstructed a police officer under the circumstances of the individual case presented to the trier of fact. *McCoy*, 378 Ill. App. 3d at 962. It is not the function of the reviewing court to retry defendant and it is the responsibility of the trier of fact to make determinations of witness credibility, the weight to be given the testimony, and the reasonable inferences to be drawn from the evidence. *McCoy,* 378 Ill. App. 3d at 962. Accordingly, we are bound by the trial court's finding that defendant's testimony was not credible. A reversal is warranted only if the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt regarding the defendant's guilt. *Collins,* 106 Ill. 2d at 261.

Here, the record shows that the officers conducted a traffic stop of the vehicle in which defendant was an occupant. The officers ordered defendant to exit the vehicle, then reenter the vehicle while waiting for a tow truck, and then exit the vehicle a second time when Mr. White's mother appeared at the scene in her vehicle to transport the other occupants, who were not under arrest, from the area.

When White's mother arrived at that location with transportation, the officers requested defendant to disperse and leave the area. At that point, the officers were searching the stopped vehicle and waiting for a tow truck. According to the officer's testimony, defendant and another occupant walked in the street between the stopped vehicle and White's mother's vehicle and acted

10

very irate, yelling profanities at the officers and threatening the officers. Additionally, while defendant was in the street between the vehicles, the rear passenger, who was under arrest, was trying to escape from Officer Montello's squad car. All of the officers testified that, during this chaotic time period, they directed defendant and the other occupant to leave the area, 5 to 15 times, in an attempt to diffuse the situation without further problems.

According to the officers' testimony, defendant did not comply with these repeated directives to disperse and depart. Consequently, defendant was placed under arrest and the officer's eventually gained control of the situation. Based on this testimony, the trial judge found that defendant's arrest was warranted because "it could have developed into a much worse situation."

Looking at the evidence in this case, in a light most favorable to the State as required by the decision in *Collins*, we conclude that the State presented sufficient evidence to the court, as trier of fact, to prove the essential elements of the offense of obstructing a peace officer beyond a reasonable doubt. See *Collins,* 106 Ill. 2d at 261; *McCoy,* 378 Ill. App. 3d at 962. Therefore, we conclude the trial court's finding that these actions by defendant impeded the police officers in their duties to arrest the rear seat passenger and to search and tow the stopped vehicle was proper.

CONCLUSION

The judgment of the Will County circuit court is affirmed.

JUSTICE SCHMIDT, specially concurring:

I concur but write separately to point out that we do not expect lawyers, judges, doctors, or anyone else to do their jobs

11

with someone standing close enough to do them harm while screaming profanities and threats at them. There is no way the police (or anyone else) can conduct their business in the face of such conduct. As judges, we will likely never experience conduct such as that exhibited by defendant in this case because anyone who begins screaming profanities at a judge while the judge is working will likely be arrested before he or she has time to get to the threats stage.

We ask the police to investigate crime and keep the peace. Common sense and experience teach that when the police are trying to do their job and one or more people are threatening them, this not only emboldens the ones doing the threatening and screaming, but many times also incites bystanders who may be drawn into the fray. These situations can and often do deteriorate quickly, putting police and the public at greater risk of harm. The more quickly an agitator is removed from the scene, the safer everyone (including the agitator) is.

JUSTICE McDADE, dissenting:

The State charged defendant with "Obstructing a Peace Officer (Class A Misdemeanor) in that, said defendant knowingly obstructed the performance of Jeffrey German of an authorized act within his official capacity, being the investigation of [defendant], *** in that he *** failed to disperse from the scene after being ordered to do so ***." The majority has found that "the sole issue on review is whether defendant's actions, involving his refusal to disperse or leave the scene after being ordered to do so, impeded the officers' performance of their official duties at the scene in this case." Slip order at 8. I believe the threshold and dispositive question is whether

12

defendant's actions, accepting them as the majority has described (see slip order at 10 (citing *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008), *People v. Collins*, 106 Ill. 2d 237, 261 (1985))), are sufficient to state the offense charged in the amended complaint.

> "When a charging instrument fails to state an offense, this constitutes a defect implicating due process concerns, and the defective charge may be attacked at any time. [Citation.] * * * If all the facts alleged may be true but nevertheless fail to constitute an offense, the charge is insufficient." *People v. Alvarado*, 301 Ill. App. 3d 1017, 1022-1023 (1998).

The State cites *People v. Weaver*, 100 Ill. App. 3d 512 (1981), for the proposition that an officer has the duty to maintain public order wherever he may be, and thus a police officer so acting is always engaged in the execution of his official duties. However, the "official duty" alleged in the charging instrument was not maintaining public order, nor was it searching the suspect vehicle, nor preventing the "develop[ment] into a much worse situation" as found by the trial court. The official duty was "investigating" (left undefined in the charging instrument) defendant.

> "A complaint for a statutory offense must either set out the offense in the language of the statute or specifically set forth the facts which constitute the crime and must notify the accused with reasonable certainty of the precise offense charged. [Citation.] * * * The State must prove the essential elements of the charging instrument as alleged *and without variance*." (Emphasis added.)

*People v. Miller*, 253 Ill. App. 3d 1032, 1035-1036 (1993).

It is of no help to argue, but the State does, that defendant impeded the officers' attempt to secure the scene of their investigation, because the officers ordered defendant to leave. There is simply no way defendant could have impeded an investigation into his criminal activity (but I note again the charging instrument did not allege what police were allegedly investigating) by remaining at the scene of the investigation. In this case the State had to prove that defendant's actions in refusing to leave the "scene of the investigation" obstructed the police from investigating him.

The majority has found that a criminal defendant who walks in the street between a vehicle police have stopped and are searching, "acting very irate, yelling profanities at the officer, and threatening the officers" (slip order at 10), is "directed *** to leave the area" (slip order at 10), and "does not comply with *** repeated directives to disperse and depart" (slip order at 11), somehow comes in the way of (slip order at 9), a police officer attempting to "investigate" the defendant (slip order at 2) that the police are trying to get to leave.

I would find that all the facts alleged in the charging instrument and found by the trial court may be true but nevertheless fail to constitute an offense. I would find that this defect in the charging instrument, on which defendant now stands convicted of a crime, renders it void; and therefore, that defendant suffered a clear and unequivocal denial of due process. See *People v. Cooper*, 182 Ill. App. 3d 243, 252 (1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 314 (1979)); *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010) ("A *** court may dismiss an indictment if the defendant establishes that he has suffered a prejudicial denial of due process. [Citation.] However, the defendant must establish that the denial of due process is 'unequivocally clear' and

that the prejudice is 'actual and substantial.' [Citation.]").

I would dismiss the charges against defendant. *People v. Redwood*, 335 Ill. App. 3d 189, 193 (2002) ("A charge that sets forth elements that do not amount to an offense may be dismissed under section 114-1(a)(8) of the Code of Criminal Procedure"). Accordingly, I dissent.