THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS G. HETZEL, Defendant-Appellant.

Second District   No. 2—87—1233

Opinion filed November 30, 1988.—Rehearing denied January 6, 1989.

Luis A. Berrones, of Gardner, Carton & Douglas, of Libertyville, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Thomas G. Hetzel, was found guilty in a jury trial in the circuit court of Lake County of obstructing a peace officer (Ill. Rev. Stat. 1987, ch. 38, par. 31—1) and was sentenced to a one-year term of probation and 75 hours of public service work.

The only issue on appeal is whether defendant was proved guilty beyond a reasonable doubt of obstructing a peace officer.

We briefly summarize the evidence at trial. Suzanne Meseke leased a residence located at 600 Buckingham Place, Libertyville, Illinois. On August 15, 1987, Meseke called the Libertyville police department and complained of a domestic dispute she was having with defendant, who resided with her. Meseke testified that she called the police because defendant had become violent and had done some pushing and shoving. Officers James Daniel and Robert Townsend and Lieutenant William McCormick were dispatched to the scene.

When the officers arrived at her home, Meseke met them outside and told Lt. McCormick that defendant had been pushing and shoving her around and that she wanted defendant removed from her home. Lieutenant McCormick noticed that Meseke had a bruise on her nose and was upset. Meseke also requested that her house keys and car keys, which were on defendant's key chain, be returned to her because she was afraid of him. Although Meseke and defendant had been living together for 3½ months, defendant was not a party to the lease agreement.

Lieutenant McCormick entered Meseke's home and informed defendant that Meseke wanted him to leave the premises. Initially, defendant told Lt. McCormick he would not leave until Lt. McCormick moved Meseke's car, which was blocking his car. Defendant was belligerent and defensive. Defendant then stated that he would leave the house and went to change his clothes while Lt. McCormick moved Meseke's car. During the discussion, Lt. McCormick told defendant he could get his property out in the morning and Meseke could have an officer present so there would not be any problem. After he changed clothes, defendant began to search for his keys which Lt. McCormick held in his hand. At that point, defendant noticed the keys in Lt. McCormick's hand, and, when Lt. McCormick asked him which keys were to the front door of Meseke's automobile, defendant took the keys from Lt. McCormick and placed the keys in his coat pocket. Lieutenant McCormick informed defendant that Meseke wanted her house and car keys returned to her because she was fearful that defendant would return. Lieutenant McCormick told defendant that he would not be allowed to leave until those keys were returned. While defendant admitted that Meseke's keys were in his possession, he refused to return the keys. Defendant stated that he had personal items in the house which were of considerable value. Defendant testified that he believed he would be unable to retrieve those items if he surrendered the keys.

When defendant refused to return Meseke's keys, Lt. McCormick walked up to defendant and reached into his coat pocket to retrieve the keys. The testimony of the witnesses as to the events which occurred subsequently differs somewhat. Lieutenant McCormick testified that as he reached for the keys, defendant pushed him, charged forward, and knocked him and Officer Daniels to the floor. A struggle ensued, and defendant was shocked with an electric stun gun, subdued, and handcuffed. Meseke testified that Lt. McCormick placed a stun gun on defendant's chest and defendant then fell to the floor immediately. Officer Daniels testified that after defendant pushed Lt. McCormick away, he and Lt. McCormick struggled to control defendant. When Daniels lost control of defendant's arm, he used his stun gun on the small of defendant's back to subdue him.

Defendant testified that after he refused to relinquish Meseke's keys, Lt. McCormick attempted to push him backwards by placing his shoulders in defendant's chest. As Lt. McCormick went for the keys, defendant stated that he put his hand someplace on Lt. McCormick, trying to stop him from getting the keys. Defendant stated that suddenly he felt his legs start to buckle and a knee being thrust into his

back. Defendant believed that someone jumped him from behind as he attempted to resist Lt. McCormick. Defendant claimed that he was shocked twice before the officers eventually subdued him.

On appeal, defendant contends that the State failed to prove beyond a reasonable doubt one of the essential elements of obstructing a peace officer. Defendant asserts that the evidence adduced at trial clearly demonstrates that Lt. McCormick was not performing an authorized act when he attempted to take Meseke's keys from defendant's coat pocket. The State maintains that in spite of defendant's belief that the officers were engaged in an unauthorized act, Lt. McCormick's conduct was proper because the keys belonged to Meseke.

■■ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

Section 31—1 of the Criminal Code of 1961 states:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." (Ill. Rev. Stat. 1987, ch. 38, par. 31—1.)

"Authorized," as used in section 31—1, means "endowed with authority." (*People v. Shinn* (1972), 5 Ill. App. 3d 468, 472, 283 N.E.2d 502.) The necessary question here is whether, based on the evidence at trial, Lt. McCormick was endowed with the authority to take defendant's key ring from his coat pocket and remove the keys to Meseke's house and automobile.

■ Section 102 of the Illinois Domestic Violence Act of 1986 (Act) states, in pertinent part:

> "Sec. 102. Purposes; Rules of Construction. This Act shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> (1) Recognize domestic violence as a serious crime against the individual and society which produces family disharmony in thousands of Illinois families, *promotes a pattern of escalating violence* which frequently culminates in intra-family homicide, and creates an emotional atmosphere that is not conductive [*sic*] to healthy childhood development;

(2) Recognize that the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability, and has not adequately acknowledged the criminal nature of domestic violence; that, although many laws have changed, *in practice there is still widespread failure to appropriately protect and assist victims*;

(3) *Support the efforts of victims of domestic violence to avoid further abuse* by promptly entering and diligently enforcing court orders which prohibit abuse and, *when necessary, reduce the abuser's access to the victim* and address any related issues of child custody and economic support, *so that victims are not trapped in abusive situations by fear of retaliation*, loss of a child or financial dependence;

(4) *Clarify the responsibilities and support the efforts of law enforcement officers to provide immediate, effective assistance and protection for victims of domestic violence*, recognizing that law enforcement officers often become the secondary victims of domestic violence, as evidenced by the high rates of police injuries and deaths that occur in response to domestic violence calls ***.'' (Emphasis added.) Ill. Rev. Stat. 1987, ch. 40, par. 2311—2.

Section 103 of the Act defines ''abuse,'' in pertinent part, as ''physical abuse.'' (Ill. Rev. Stat. 1987, ch. 40, par. 2311—3(1).) It further defines ''physical abuse'' as ''knowing or reckless use of physical force.'' (Ill. Rev. Stat. 1987, ch. 40, par. 2311—3(9)(i).) ''Family or household members,'' as defined in the Act, include ''persons who share or formerly shared a common dwelling.'' (Ill. Rev. Stat. 1987, ch. 40, par. 2311—3(3).) Finally, of particular relevance to this case, section 304 states, in pertinent part:

''Sec. 304. Assistance by law enforcement officers. (a) Whenever a law enforcement officer has reason to believe that a person has been abused by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse, including:

(1) Providing or arranging transportation for the victim of abuse to a medical facility for treatment of injuries or to a nearby place of shelter or safety, or after the close of court business hours, providing or arranging for transportation for the victim to the nearest available circuit judge or associate judge so the victim may file a petition for an emergency order under Section 217(c) of this Act;

(2) Accompanying the victim of abuse to his or her place of

residence for a reasonable period of time to remove necessary personal belongings and possessions;

(3) Offering the victim of abuse immediate and adequate information of his or her rights, written in English and Spanish, which shall include a summary of the procedures and relief available to victims of abuse under this Act, including the right to emergency relief pursuant to Section 217(c) of this Act, and the officer's name and badge number;

(4) Providing the victim, wherever possible, with one referral to a local service agency; or, if the victim is 60 years of age or older, a referral to a network of services for seniors; or, if the victim is hearing-impaired, a referral to a sign language interpreter; or if the victim cannot communicate in English, a referral to a community program with translation services; and

(5) Arresting the abusing party where appropriate." (Ill. Rev. Stat. 1987, ch. 40, par. 2313—4.)

Although section 304 of the Act enumerates, as set forth above, specific examples of authorized conduct by law enforcement officers in the event of an abusive domestic situation, we interpret this section to be inclusive rather than exclusive in requiring an officer to use all reasonable methods necessary to prevent further abuse.

In this case, Lt. McCormick, upon arriving at Meseke's residence, was informed by Meseke that defendant had pushed and shoved her and that she wanted him removed from her home. He further observed that Meseke had a bruise on her nose and was upset. Although defendant initially indicated to the police that he would not leave, he later stated that he was willing to leave. Prior to leaving, however, he took his key ring and keys from Lt. McCormick's hand, placed them in his coat pocket, and refused to return them to Lt. McCormick. The key ring held a key to Meseke's home and a key to her automobile.

██ Under these particular circumstances, we find that Lt. McCormick was authorized to remove from defendant the two keys which would have given defendant access to Meseke's home. Lt. McCormick was aware that defendant had pushed and shoved Meseke, which conduct constitutes abuse by a household member under the Act. Thus, Lt. McCormick had the authority, pursuant to the Act, to use all reasonable means to prevent further abuse to Meseke. Under the circumstances of this case, it was reasonable to remove those keys from defendant's possession which would have allowed him to gain access to Meseke's residence. Therefore, defendant's conduct in preventing Lt. McCormick from obtaining the keys to Meseke's house and automobile obstructed the performance of an authorized act by

Lt. McCormick. We hold, therefore, based upon the evidence presented at trial, defendant was proved guilty beyond a reasonable doubt of the offense of obstructing a peace officer.

The judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.