# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*People v. Baskerville*, 2012 IL 111056

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHRISTINE BASKERVILLE *et al.* (Joseph Baskerville, Appellee). |
| Docket No. | 111056 |
| Filed | February 17, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A physical act is not required for the offense of obstructing a peace officer, which may be based on knowingly furnishing a false statement that impedes performance of authorized duties; but a conviction was properly reversed where an officer's lack of success in executing a traffic stop was not due to the falsity. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of La Salle County, the Hon. Cynthia Raccuglia, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Brian J. Towne, State's Attorney, of Ottawa (Michael A. Scodro, Solicitor General, and Michael M. Glick and Drew Meyer, Assistant Attorneys General, of Chicago, and Patrick Delfino, Robert J. Biderman and James C. Majors, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People. |
|---|---|
| | Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Jay Wiegman, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee. |
| | |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion. |
| | Chief Justice Kilbride dissented, with opinion. |

## OPINION

¶ 1 In this appeal, we are asked to consider whether the offense of obstructing a peace officer under section 31-1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/31-1 (West 2006)) necessitates proof of a physical act, and whether the evidence was sufficient to support defendant's conviction. For the reasons that follow, we hold that proof of a physical act is not a necessary element of the offense, and that knowingly furnishing a false statement to an officer may constitute obstruction under section 31-1(a) where the statement interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties. We further hold that in this case the State failed to prove that defendant's false statement obstructed the officer. Accordingly, we affirm the judgment of the appellate court.

¶ 2           BACKGROUND

¶ 3 Defendant Joseph Baskerville (defendant) was charged with obstructing a peace officer under section 31-1(a) of the Code (720 ILCS 5/31-1(a) (West 2006)) for lying to La Salle County Sheriff's Deputy John Dyke regarding the whereabouts of defendant's wife, Christine Baskerville. The charging instrument provided that defendant "knowingly obstructed the performance of John Dyke of an authorized act within his official capacity, being the execution of a traffic stop, knowing John Dyke to be a peace officer engaged in the execution of his official duties, in that he provided false information to Deputy Dyke as to the whereabouts of Christine Baskerville."

¶ 4    At a joint bench trial, Deputy Dyke testified that on the evening of April 16, 2007, he was standing outside a private security building in the Lake Holiday community, talking to some private security officers, when he saw Christine Baskerville and a passenger in a blue van traveling on County Highway 3 in La Salle County. Dyke recognized Christine from previous contacts with her and believed that her license had been suspended.

¶ 5    Dyke's observation was corroborated by Craig Michael Conley, a field training officer and patrolman for the Lake Holiday Security Department. Conley testified that he was on duty on April 16, 2007, at about 6:21 p.m., having a conversation with Dyke. Christine drove by in a van with a child in the passenger seat, heading south on County Highway 3. Conley also recognized Christine from having had prior dealings with her.

¶ 6    Dyke then returned to his vehicle and, knowing where Christine lived, attempted to intercept her on her way home by taking a different route. At that time, Dyke requested that the dispatcher confirm that Christine's license was suspended. When Dyke reached the intersection of Lois and Suzie Streets, Christine drove by and Dyke saw her again through the passenger side window. Dyke followed behind her, but he did not activate his emergency lights. By the time he received the confirmation that Christine's license was suspended, she was pulling into her driveway. Christine exited the driver's side of the van and proceeded toward her house. Dyke testified that he asked Christine to return to her vehicle, but she continued to walk into the house. He did not see her again.

¶ 7    After Christine entered the home, defendant emerged and had a conversation with Dyke outside the residence. Dyke informed defendant that he had caught Christine driving on a suspended license. He asked defendant to go into the house and retrieve Christine. Defendant initially told Dyke that he was driving the van and that Christine was not home. Defendant then went inside the house. When he reemerged he said he did not know what was "going on" because he was at home. Dyke acknowledged that defendant told him that he could enter the home to look for Christine, but Dyke declined to enter. Instead, he told defendant that he would send Christine a ticket in the mail and "refer the report of the incidents for obstructing" an officer. The State then rested.

¶ 8    Several family members and a family friend testified on behalf of the defense. Thomas Crothers, an 18-year-old neighbor and family friend of the Baskerville children, testified that he arrived at their home at about 4 p.m. on April 16, 2007. Defendant was sleeping on the couch and Christine was not home. At about 6 p.m., Crothers drove defendant's 17-year-old daughter, Annie Baskerville, to the store in the Baskervilles' blue van. On the way home, they noticed a La Salle County police vehicle behind them, but did not "think anything of it" because the emergency lights were not activated. Crothers pulled the van into the driveway, went inside the house to return the keys, left out the back door and went home. He further testified that when he returned from the store Christine was not home and defendant was still sleeping on the couch.

¶ 9    Annie testified that the police car pulled up to the end of their driveway, she exited the van and had a conversation with Dyke. He asked Annie to go inside and get her mom, and Annie told him that her mom was not home. Dyke then told her to "go get who[ever] walked in the door." She went and got her dad because Crothers had gone home. When she went

inside the house she did not see her mother.

¶ 10    Nicoletta Baskerville, defendant's 13-year-old daughter, testified that at some point that day her sister Annie went to the store with Crothers. When they returned, Nicoletta was in the garage and saw a police car parked by the mailbox. Annie and Crothers walked inside and Nicoletta went to the car to get her backpack. Dyke approached Nicoletta, but she told Dyke she could not talk to strangers. According to Nicoletta, her dad was asleep in the house. Christine testified that she went to her sister-in-law's house that day to help take care of her newborn baby. She got a ride from a friend at about 7:30 a.m. and defendant picked her up at about 9 p.m. that evening.

¶ 11    Defendant testified that he worked in the morning and returned home at about 2 p.m. that day. Christine was not home and he lay down on the couch and took a nap. His daughter later woke him, telling him that the police were outside. Defendant stepped outside and had a conversation with Dyke who told him that his wife was driving on a suspended license and that defendant needed to go inside and retrieve her. Defendant testified that he went back in the house and Christine was not at home. He then related to Dyke that Christine was not home.

¶ 12    In rebuttal, Dyke and Conley testified that they knew Crothers from prior contacts with him and denied that he was driving the van that day. Dyke further testified that he sent Christine a ticket by certified mail for driving with a suspended license, which was initially returned to him. Christine was ultimately served with a citation several weeks later.

¶ 13    Following closing argument, the circuit court of La Salle County found the State's witnesses consistent and defendant's witnesses entirely inconsistent. Specifically, with regard to defendant's statement to Dyke that he could "go inside and look," the court stated as follows:

> "That was an issue that bothered me a little bit in making my decision. But, on the other hand, when I look at the evidence and weigh it, I mean if she wanted to hide, she could hide. I'm sure the deputy wasn't going to look at every place in the house. He would probably just come in and look in the kitchen and by then she could have been hidden."

The circuit court found both Christine and defendant guilty of obstructing a peace officer pursuant to section 31-1(a) of the Code (720 ILCS 5/31-1(a) (West 2006)). They were sentenced to 90-day and 150-day terms of imprisonment, respectively.

¶ 14    On appeal, a majority of the appellate court, relying on our decision in *People v. Raby*, 40 Ill. 2d 392 (1968), concluded that obstruction requires a physical act and that providing false information to a peace officer is not a physical act. Therefore, the court held that the State's evidence was insufficient to prove the offense as charged against defendant and reversed defendant's conviction. Nos. 3-08-0656, 3-08-0657 cons. (unpublished order under Supreme Court Rule 23). Justice Schmidt dissented, asserting that *Raby* was distinguishable because the defendant there was charged with the related offense of resisting a peace officer. The dissent noted that the court in *Raby* was asked to consider only the constitutionality of the statute, and did not establish any standards for ascertaining guilt. Additionally, Justice Schmidt would have found that knowingly providing the police with false information was

a physical act that hindered the officer's ability in this case to perform his duties and satisfied the *actus reus* requirement of section 31-1(a) of the Code. Nos. 3-08-0656, 3-08-0657 cons. (unpublished order under Supreme Court Rule 23) (Schmidt, J., concurring in part and dissenting in part). We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Defendant also seeks cross-relief, challenging the sufficiency of the evidence to support his conviction.

¶ 15                                                      ANALYSIS

¶ 16        Article 31 of the Code addresses various offenses related to interference with public officers. Section 31-1(a) specifically relates to resisting or obstructing a peace officer and provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2006).

¶ 17        We are initially asked to construe the meaning of "obstruct" as it applies in the context of this particular statute. Defendant concedes that he provided false information to the officer regarding the whereabouts of Christine. The point of contention is whether providing false information can constitute obstruction under the statute.

¶ 18        Issues of statutory construction are questions of law subject to *de novo* review. *People v. Gutman*, 2011 IL 110338, ¶ 12. Our primary objective in interpreting the statute is to ascertain and give effect to the intent of the legislature. The best indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Id*. In determining the plain meaning of the statute, we consider the statute in its entirety and are mindful of the subject it addresses and the legislative purpose in enacting it. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). We will not depart from the plain meaning of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *People v. Hammond*, 2011 IL 110044, ¶ 53.

¶ 19        The term "obstruct" is not defined in section 31-1. When a statutory term is not expressly defined, it is appropriate to denote its meaning through its ordinary and popularly understood definition. *People v. Beachem*, 229 Ill. 2d 237, 244-45 (2008). At the time the statute was adopted, the dictionary defined "obstruct" to mean "1 : to block up : stop up or close up : place an obstacle in or fill with obstacles or impediments to passing *** 2 : to be or come in the way of : hinder from passing, action, or operation : IMPEDE ***." Webster's Third New International Dictionary 1559 (1961). In turn, "hinder" means "to make slow or difficult the course or progress of" (*id*. at 1070), and "impede" means "to interfere with or get in the way of the progress of" (*id*. at 1132). Applying the dictionary definition, it is evident that "obstruct" encompasses physical conduct that literally creates an obstacle, as well as conduct the effect of which impedes or hinders progress. Furnishing false information could thus be included within that definition, as it can undoubtedly interfere with an officer's progress.

¶ 20        Defendant acknowledges that the term "obstruct" can have varied meanings or implications depending on the context, but argues that the legislature intended to limit the purview of section 31-1(a) to physical acts. Defendant directs our attention to *People v.*

*Raby*, 40 Ill. 2d 392 (1968), to support a narrow construction of the term. In *Raby*, which was decided shortly after the statute's enactment, this court was called upon to consider the constitutionality of section 31-1 in the context of a vagueness and overbreadth challenge to resisting a peace officer. *Id.* at 398-99. The defendant was convicted of resisting arrest when he went limp during a protest. Relying on the factually similar federal district court case of *Landry v. Daley*, 280 F. Supp. 938, 959 (N.D. Ill. 1968), *rev'd on other grounds sub nom. Boyle v. Landry*, 401 U.S. 77 (1971), the court found that the statutory term "obstruct" implied some physical act or exertion beyond mere argument. *Raby*, 40 Ill. 2d at 399.

> "Given a reasonable and natural construction, [the statute does] not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe[s] only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (Internal quotation marks omitted.). *Id*. at 399 (quoting *Landry*, 280 F. Supp. at 959).

In the context of the constitutional challenge, the import of *Raby* was "a concern that the phrase 'resists or obstructs' is not defined so broadly that it places citizens in jeopardy of an arrest for mere verbal disagreement" (*People v. Bohannon*, 403 Ill. App. 3d 1074, 1077 (2010)), and an awareness that criminalizing verbal conduct may run afoul of free speech and other constitutionally protected conduct. See *District of Columbia v. Little*, 339 U.S. 1, 6 (1950) (mere criticism of an officer in the performance of his duties is not usually held to be unlawful interference); *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (first amendment protects profanity-laden speech directed at police officers). Thus, the court's analysis in *Raby* was driven by first amendment concerns which are not at issue in the present case. Furthermore, the question of whether providing false information could constitute obstruction was not before the court in *Raby* and, therefore, does not control our analysis here.

¶ 21    In those cases specifically addressing obstructing a peace officer, section 31-1(a) has most often been applied in connection with a physical act. See, *e.g.*, *People v. Martinez*, 307 Ill. App. 3d 368, 373 (1999) (evidence that defendant stood in between the officers and the people they were trying to question, in conjunction with "mouthing" to the deputy, constituted obstructing a peace officer where the officer was unable to concentrate on the questioning); *People v. Woidtke*, 224 Ill. App. 3d 791, 802 (1992) (the defendant's intrusion while police were conducting an authorized investigation of a crime-scene area, his failure to stop when approached and his supplying false information to the police provided probable cause to arrest for the offense of obstructing a peace officer); *People v. Hetzel*, 176 Ill. App. 3d 630, 635 (1988) (where officers were authorized to remove keys from defendant under the Illinois Domestic Violence Act, defendant's conduct in preventing them from obtaining the keys by placing them in his pocket and forcibly resisting their recovery attempt constituted obstruction); *People v. Taylor*, 84 Ill. App. 3d 467, 470 (1980) (evidence that the defendant pulled the officer's hair, knowing that the officers were escorting prisoners to county jail, disrupted and impeded the officer in the performance of his official duties); see also *People v. Holdman*, 73 Ill. 2d 213, 222 (1978) (flight held to be a "physical act within

the purview of this statute").

¶ 22    However, in *People v. Weathington*, 82 Ill. 2d 183, 186 (1980), we recognized the possibility, but left unanswered the question of, whether conduct falling between mere argument and a physical act could ever constitute obstruction under section 31-1(a). Indeed, other Illinois cases have recognized the potential for conduct not contemplated in *Raby* to fall within the meaning of "obstruct." See *City of Chicago v. Meyer*, 44 Ill. 2d 1, 6 (1969) (the defendant's refusal to move after being told to disperse when police were unable to maintain order among opposing factions constituted obstruction); *People v. Gordon*, 408 Ill. App. 3d 1009, 1017 (2011) (the defendant's failure to leave the scene of a traffic stop after being repeatedly ordered to leave constituted obstruction); *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004) (the defendant's repeated refusal to comply with the officer's order to exit his vehicle following a lawful traffic stop to investigate a DUI constituted obstruction where the behavior threatened the officer's safety); *People v. Meister*, 289 Ill. App. 3d 337, 342 (1997) (defendant's initiating contact with police to furnish false information regarding his wife's whereabouts obstructed police in the service of process under closely related statute); *People v. Gibbs*, 115 Ill. App. 2d 113, 118-19 (1969) (upholding a conviction for obstructing where the defendant advised suspects being arrested that police had no right to search them, and told suspects to enter private property so police could not search without a warrant, thus frustrating the officers ability to complete the arrests); see generally Christopher Hall, Annotation, *What Constitutes Obstructing or Resisting Officer, in Absence of Actual Force*, 66 A.L.R.5th 397 (1999); 67 C.J.S. *Obstructing Justice* § 18 (2002) ("The offense of obstructing or interfering with an officer in the performance of a duty may be committed without any physical obstruction or interference, or without force or violence.").

¶ 23    Based upon the plain language of the statute, section 31-1 does not particularize all of the types of obstructive conduct that may fall within its purview. 720 ILCS 5/31-1 (West 2006). Rather, the legislature has chosen to frame the provision here in broad terms within the confines of free speech, rights of assembly and other constitutional concerns. Although a person may commit obstruction of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an obstruction. The legislative focus of section 31-1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties. That inquiry is for the trier of fact, based upon the facts and circumstances of each case. *Gordon*, 408 Ill. App. 3d at 1016.[1]

¶ 24    This interpretation is consistent with the purpose of the statute, which is not only to promote the orderly and peaceful resolution of disputes, but to prevent "frustration of the valid enforcement of the law." *Landry*, 280 F. Supp. at 959. Providing misinformation to the police that interferes with and is relevant to the performance of his authorized duties may certainly frustrate law enforcement. Additionally, furnishing false information is not subject

_____

[1] We note that the statute also requires that the obstruction must be knowingly done; meaning that the defendant must be consciously aware that his conduct is practically certain to cause the result. 720 ILCS 5/4-5(b) (West 2006).

to the same constitutional protections raised in *Raby* as politically motivated or purely expressive speech. "Neither the United States Constitution nor the Illinois Constitution conveys a right to lie." *People v. Ellis*, 199 Ill. 2d 28, 43 (2002) (finding a substantive difference between remaining silent and actively lying in addressing the constitutionality of the related offense of obstructing justice).

¶ 25    This interpretation is also consistent with our obligation to avoid a construction which renders a part of the statute superfluous or redundant, and instead presume that each part of the statute has meaning. *People v. Jones*, 223 Ill. 2d 569, 594 (2006). Although the statute addresses related types of interference, the statute contains two separate prohibitions, "resist" or "obstruct." "Resist" is defined as "to withstand the force or the effect of" or the exertion of "oneself to counteract or defeat." Webster's Third New International Dictionary 1932 (1961). Thus, "resist" implies some type of physical exertion in relation to the officer's actions. It would be superfluous for the legislature to then limit "obstruct" to the same meaning.

¶ 26    In support of a narrower construction, defendant makes several untenable arguments. He asserts that by elevating the offense to a Class 4 felony where the obstruction is "the proximate cause of an injury to a peace officer" in section 31-1(a-7) (720 ILCS 5/31-1(a-7) (West 2006)), the legislature effectively excludes forms of obstruction that are not physical. However, the conclusion that obstruction could never be based on a nonphysical act does not necessarily follow from that premise. Rather, section 31-1(a-7) merely addresses a subset of obstruction in those circumstances where an officer is injured and punishes that conduct more severely. We additionally reject defendant's assertion that section 31-1(a) only applies to physical acts because it involves officers and correctional institutional employees, "people who are necessarily involved in physical interaction with prisoners and suspects." This interpretation would create a requirement not present in the statute that the obstruction occur during the course of a physical interaction. We may not read such a limitation into the statute. *Hammond*, 2011 IL 110044, ¶ 53.

¶ 27    Defendant next asserts that because knowingly furnishing false information to an officer is specifically enumerated as an act of obstruction in related section 31-4 (720 ILCS 5/31-4 (West 2006) (obstructing justice)) and in the recently enacted section 31-4.5 (720 ILCS 5/31-4.5 (West 2010) (obstructing identification)),[2] its omission in section 31-1(a) "signals the [l]egislature's intent that mere words were not intended to constitute obstruction of a peace officer."

¶ 28    That conclusion again relies on a faulty premise. Under the offense of obstructing justice physical acts, including destroying, altering, concealing or disguising physical evidence, or concealing oneself are also specifically enumerated as obstructive conduct. 720 ILCS 5/31-4 (West 2006). Under defendant's reading, the physical acts enumerated in section 31-4, including hiding from police or concealing evidence, would also then be excluded as a means of obstructing a peace officer under section 31-1(a). Defendant's argument does not inform our analysis. We agree with the State that a more harmonious reading of these related statutes

---

[2]Pub. Act 96-335 (eff. Jan. 1, 2010).

is that sections 31-4 and 31-4.5 target a specific subset of obstructive conduct, to which furnishing false information belongs.

¶ 29    Accordingly, for the foregoing reasons, we hold that the offense of obstructing a peace officer under section 31-1(a) of the Code does not necessitate proof of a physical act, and that providing false information may constitute obstruction under section 31-1(a) when the misinformation interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties. Having concluded that furnishing false information is not categorically excluded from the purview of section 31-1(a), we next consider whether, in light of particular facts adduced, the evidence was sufficient to support defendant's conviction for the offense as charged.

¶ 30                              II. Sufficiency of the Evidence

¶ 31    In reviewing the sufficiency of the evidence in a criminal case, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Martin*, 2011 IL 109102, ¶ 15.

¶ 32    In the present case, the State was required to prove that: (1) defendant knowingly obstructed a peace officer; (2) the officer was performing an authorized act in his official capacity; and (3) defendant knew he was a peace officer. 720 ILCS 5/31-1(a) (West 2006). Defendant argues that his conduct did not rise to the level of obstruction where his false statement did not impede or hinder Dyke in the performance of an authorized act.

¶ 33    Taking the facts in the light most favorable to the State, Dyke observed Christine driving on a suspended license in violation of section 6-303 of the Illinois Vehicle Code (625 ILCS 5/6-303 (West 2006)). After confirming the suspension, Dyke sought to execute a traffic stop. It is undisputed that he was authorized to stop Christine, that she refused his order to return to her vehicle, and that instead she entered her home. By her conduct, she frustrated Dyke's ability to complete the traffic stop, and she was ultimately convicted for obstructing a peace officer.

¶ 34    The State essentially maintains that "defendant's lies assisted Christine in evading arrest or citation for three or four weeks." The facts here do not support the State's assertion. Sometime after Christine went into the house, defendant and Dyke had a conversation outside the home. Contrary to the State's characterization, there was no evidence that defendant was "accosting" the officer at that time. Rather, Dyke informed defendant that he observed Christine driving while her license was suspended and requested that defendant retrieve her from the home. Defendant initially stated that Christine was not home, but went back in the house, and when he returned, he indicated that he did not know what was going on, but told the officer that he could "go inside and look" to search the home.

¶ 35    In analyzing the factual scenario, the false statement only has legal significance if it was made in relation to an authorized act within the officer's official capacity and if the false information actually impeded an act the officer was authorized to perform. See *People v.*

-9-

*Hilgenberg*, 223 Ill. App. 3d 286, 290 (1991). At no point did defendant's false statement that Christine was not home hinder Dyke in executing the traffic stop. Even if Dyke had probable cause to arrest Christine, and Christine thwarted his ability to arrest her in a public place, defendant consented to a search and Dyke chose not to enter the home. Therefore, there was no evidence that defendant's statement hampered or impeded the officer's progress in any way.

¶ 36    We recognize that the trial court inferred that Christine could have been hiding in the home and that it would have been an act of futility to search the home. Nevertheless, defendant was not charged with physically aiding Christine by hiding her. He was charged with providing false information. Indeed, the State concedes that defendant's conviction was "not based on his 'refusal to retrieve' Christine, it was based on his lies regarding Christine's whereabouts." Furthermore, there was no evidence presented to support a reasonable inference that defendant ever hid his wife in the home. The State never established a time frame between her entering the home and defendant's conversation or how long the conversation lasted. The State presented no evidence that the front door was the only egress from the home. Conduct resting on Christine's part in fleeing to avoid the lawful traffic stop cannot be attributable to defendant here under these facts. Based on defendant's statement "go inside and look," Dyke was free to enter the home and was not hindered in doing so. Moreover, the fact that the citation may have been returned unserved cannot be attributable to defendant's false statement. Defendant was not charged with obstructing the service of the citation. Accordingly, for the foregoing reasons, defendant was not proved guilty beyond a reasonable doubt of violating section 31-1(a) of the Code (720 ILCS 5/31-1(a) (West 2006)).

¶ 37                                    CONCLUSION

¶ 38    For the reasons set forth above, we conclude that knowingly furnishing a false statement to police may constitute obstruction of a peace officer under section 31-1(a) where the statement interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties. We further conclude that taking the evidence in the light most favorable to the State, it failed to establish that defendant's false statement impeded the officer's ability to execute the traffic stop. Therefore, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court.

¶ 39    Appellate court judgment affirmed.

¶ 40    CHIEF JUSTICE KILBRIDE, dissenting:

¶ 41    I agree with the majority's holding that the offense of obstructing a peace officer under section 31-1(a) does not require proof of a physical act, and that providing false information may constitute the offense when it "interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties." *Supra* ¶ 29. I disagree, however, with the majority's decision to reverse defendant's conviction. Accordingly, I dissent.

¶ 42    Obstruction of a peace officer under section 31-1(a) requires the State to prove that

-10-

defendant "knowingly resist[ed] or obstruct[ed] the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity." 720 ILCS 5/31-1(a) (West 2006). As the majority determines, providing false information can constitute obstruction when it impedes or hinders the peace officer's performance of an authorized act. Consequently, the question here is whether the State presented sufficient evidence that defendant's conduct impeded or hindered Deputy Dyke's performance of the traffic stop.

¶ 43    It is indisputable that this case required a resolution of two conflicting versions of events. The State claimed that Christine was driving the van, and that defendant lied about driving the van himself and then lied about Christine's location, preventing Deputy Dyke from completing the traffic stop. In contrast, defendant claimed that Crothers, a family friend, was driving the van and that Christine was not home.

¶ 44    Of course, resolving a conflict in the evidence is a role uniquely reserved to the trier of fact. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Here, the trier of fact, the judge in defendant's bench trial, evaluated the evidence extensively. The judge found that the defense theory that Crothers was driving the van "seems completely ridiculous." The judge further found that the State's witnesses were "consistent and credible," and that defendant's witnesses were "inconsistent with the facts and reason."

¶ 45    When defense counsel noted that defendant ultimately gave Deputy Dyke permission to search the house, the trial court responded as follows:

> "That was an issue that bothered me a little bit in making my decision. But, on the other hand, when I look at the evidence and weigh it, I mean if [Christine] wanted to hide, she could hide. I'm sure the deputy wasn't going to look at every place in the house. He would probably just come in and look in the kitchen and by then she could have been hidden."

This record demonstrates that the trier of fact was aware of the conflict in the evidence and determined that the State's witnesses were more credible. More critically, though, the trier of fact found that the delay caused by defendant's interaction with Deputy Dyke afforded Christine the opportunity to hide in the house, making a search futile. In other words, the trier of fact inferred from the evidence that defendant's repeated lies, first claiming that he was driving the van and then claiming that he did not know what was going on, hindered or impaired Deputy Dyke's performance of the traffic stop.

¶ 46    Although the majority recognizes this inference by the trial court, the majority attempts to discount it by listing a number of perceived shortcomings in the State's evidence. *Supra* ¶ 36. Even assuming that these alleged insufficiencies rendered the evidence in this case close, I cannot join in the majority's independent reevaluation of the evidence. See *Siguenza-Brito*, 235 Ill. 2d at 228 (when considering a challenge to the sufficiency of the evidence, the reviewing court should not retry the defendant). Instead, I would defer to the trier of fact's evaluation of the evidence. Here, the trial judge inferred that defendant's conduct gave Christine sufficient time to hide in the house, making any subsequent search futile, and, therefore, hampered or delayed Deputy Dyke's performance of the traffic stop.

¶ 47    I believe that the trial court's inference is reasonable. Indeed, this court is *required* to allow all reasonable inferences from the evidence in the State's favor. *People v. Gonzalez*,

-11-

239 Ill. 2d 471, 478 (2011). Furthermore, the evidence here is not so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt, the requisite standard for reversing a criminal conviction. *People v. Givens*, 237 Ill. 2d 311, 334 (2010). Consequently, in accordance with the applicable standards of review, I would reverse the appellate court's judgment and affirm defendant's conviction for obstruction of a peace officer under section 31-1(a).