2020 IL App (1st) 180181-U

No. 1-18-0181

Order filed October 9, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 600 |
| | ) | |
| DION LUSTER, | ) | Honorable |
| | ) | Pamela Leeming, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction for aggravated fleeing or attempting to elude a peace officer is affirmed over his contention that the State failed to prove beyond a reasonable doubt that he traveled at least 21 miles per hour over the legal speed limit.

¶ 2   Following a bench trial, defendant Dion Luster was found guilty of possession of a stolen motor vehicle (PSMV) (625 ILCS 5/4-103(a)(1) (West 2016)), aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2016)), and possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). Due to his criminal background, he was sentenced

as a Class X offender to six years in prison for PSMV. He was also sentenced to extended terms of six years for aggravated fleeing or attempting to elude a peace officer and possession of a controlled substance. All sentences were to be served concurrently. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude a peace officer because the evidence at trial failed to establish that he exceeded the speed limit by more than 21 miles per hour (mph). We affirm.[1]

¶ 3    Following his December 1, 2016 arrest, defendant was charged with PSMV, aggravated fleeing or attempting to elude a peace officer, possession of a controlled substance with intent to deliver, and possession of a controlled substance. Relevant here, the count for aggravated fleeing or attempting to elude a peace officer alleged that defendant, as the driver of a motor vehicle having been given a visual or audible signal by a police officer directing him to bring his vehicle to a stop, failed or refused to obey such a direction, increased his speed, extinguished his lights, or otherwise fled or attempted to elude the officer and did so at a rate of speed at least 21 mph over the legal speed limit.

¶ 4    At trial, Village of Bellwood Master Sergeant John Trevarthen testified that around 4:20 p.m. on December 1, 2016, he observed a silver Nissan at the intersection of 25th Avenue and Oak Street and ran its registration. After learning that the Nissan had been reported stolen, he notified dispatch and attempted a traffic stop. The Nissan made a U-turn "to avoid the stop," so Trevarthen activated his sirens and proceeded southbound on 25th. He was directly behind the Nissan and

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

observed it disobey a red light. When he was between Oak and Washington Boulevard on 25th, Trevarthen observed that his vehicle's speedometer read 55 mph. The speed limit at that location was 30 mph. At this point, the Nissan was "pulling away," with the distance between the Nissan and Trevarthen's vehicle increasing. Because of the speed, time of day, and traffic conditions, Trevarthen terminated the pursuit. He continued southbound at the speed limit and saw the Nissan stopped in traffic just south of the intersection of Harrison Street and 25th. The vehicle had "heavy front-end" damage. Trevarthen spoke to a witness and relayed certain information over the radio. He then verified that the Nissan was the same vehicle he had pursued and that no one was inside. Trevarthen recovered two packages containing 19 separate packages of suspect heroin from underneath the radio near the change bin.

¶ 5     During cross-examination, Trevarthen acknowledged he had not observed a traffic violation or anything "abnormal" when he ran the Nissan's plate; rather, it was routine. After the Nissan made a U-turn and passed him, he turned to follow it. When he pulled onto 25th, the Nissan was a few car lengths ahead. For several blocks there were no vehicles between Trevarthen's vehicle and the Nissan. The Nissan moved into the center lane when it encountered traffic. When Trevarthen looked at the speedometer, the Nissan was "nearly" a block ahead of him.

¶ 6     Trial counsel then asked whether Trevarthen had the "opportunity to pace" the Nissan. He answered he was traveling at 55 mph and the Nissan was pulling away. Counsel next asked whether Trevarthen paced the Nissan for "a full two blocks." Trevarthen admitted he did not, but noted that he paced the Nissan for approximately one block until it entered the center lane and he terminated the pursuit. He did not have radar. Although he could not tell the Nissan's "exact speed," it was traveling faster than he was. Trevarthen did not know when the speedometer on his vehicle was

calibrated, but the vehicle was less than a year old. During the investigation, Trevarthen learned the Nissan was owned by Hertz Rental Car Company. He did not receive any information identifying defendant as the renter.

¶ 7    The trial court then asked how much time passed between the termination of the pursuit and when Trevarthen saw the Nissan again, and he answered, "less than a minute."

¶ 8    Philippa Beckmam[2] testified that she was in the intersection of Harrison and 25th turning left when a silver vehicle collided with her vehicle. The driver exited the vehicle and ran south. The State then played a video of the accident which Beckmam narrated. The State admitted the video into evidence. This video is not included in the record on appeal.

¶ 9    James Evers and Riverwoods police officer Joseph Petersen were also present at the intersection and saw the accident. Each man testified and identified defendant in court as the driver of the Nissan.

¶ 10    Bellwood police officer Albert Villarreal testified that after speaking with Trevarthen, he relocated, found defendant hiding under a bridge, and took him into custody. A key fob with a rental tag was recovered from defendant during a custodial search.

¶ 11    The State entered stipulations that a chemist would testify the 19 items recovered from the Nissan weighed 3.2 grams and tested positive for the presence of heroin. It was further stipulated that the Nissan was the property of Hertz Rental Car Company, was rented by Joseph Hern on November 16, 2016, and reported stolen as of December 1, 2016. Moreover, no agent of Hertz had given defendant permission to possess the Nissan.

---

[2] The witness gave her name as Philippa Beckmam in the report of proceedings, but the parties' briefs refer to her as Philippa Beckman.

¶ 12    The defense moved for a directed verdict, which the trial court granted as to the charge of possession with intent to deliver only. Defendant rested without presenting any witnesses.

¶ 13    Following closing argument, the court found defendant guilty of the remaining counts. Defendant filed a motion for a new trial alleging, in pertinent part, that Trevarthen's testimony was insufficient to establish the Nissan's speed when he had no radar, was more than a block away at the time, and did not pace the Nissan. The court denied the motion. Due to defendant's criminal background, the trial court sentenced him as a Class X offender to six years in prison for PSMV. He was also sentenced to extended terms of six years for aggravated fleeing or attempting to elude a peace officer and possession of a controlled substance. All sentences were concurrent.

¶ 14    On appeal, defendant contends that he was not proven guilty of aggravated fleeing or attempting to elude a peace officer beyond a reasonable doubt when the evidence at trial was insufficient to establish that he exceeded the speed limit by more than 21 mph.

¶ 15    When a challenge is made to the sufficiency of the evidence at trial, a reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. In making this determination, we review the evidence in the light most favorable to the State. *Id.* All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). A trier of fact is not required to disregard inferences which flow normally from the evidence before it or seek out "all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).

¶ 16    Relevant here, a defendant, while operating a motor vehicle, commits fleeing or attempting to elude a peace officer if he willfully fails or refuses to bring his vehicle to a stop when a peace

officer gives a visual or audible signal to do so. 625 ILCS 5/11-204(a) (West 2016). The signal given by the officer may be by, among other things, a siren or oscillating, rotating, or flashing red or blue lights which, when used in conjunction with an audible horn or siren, indicates that the vehicle is an official police vehicle. *Id.* The offense is aggravated if, among other things, the defendant drove at least 21 mph over the speed limit. 625 ILCS 5/11-204.1(a)(1) (West 2016). Proof of a defendant's speed may be established by means of a radar gun or stopwatch, by pacing his vehicle, or by the direct testimony of an officer. *People v. Lipscomb*, 2013 IL App (1st) 120530, ¶ 7.

¶ 17    Here, Trevarthen testified that his speedometer read 55 mph when he was on 25th between Oak and Washington and that the speed limit at that location was 30 mph. He further testified that at this point the distance between his vehicle and the Nissan was increasing. Trevarthen acknowledged that he did not have radar but testified that he paced the Nissan for one block and that it was traveling faster than his vehicle. Thus, the evidence viewed in the light most favorable to the State was such that a rational trier of fact could have found that defendant drove least 21 mph over the legal speed limit.

¶ 18    Defendant, however, contends that Trevarthen's testimony is "too unconvincing" and argues that Trevarthen could not have accurately gauged defendant's speed when the Nissan was a block ahead, Trevarthen did not maintain a steady pace, and the circumstances of the pursuit, including the presence of traffic, made it was "unlikely" that defendant was still pulling away when Trevarthen looked at the speedometer. Defendant concludes Trevarthen's testimony did not establish "a reliable form of pacing" and was insufficient to sustain his conviction.

¶ 19    Defendant relies on *Lipscomb*. In that case, this court determined the State failed to prove the defendant was traveling at least 21 mph over the legal speed limit where the police officer testified that he made a U-turn and began pursuing the defendant, "[a]t some point" during the pursuit his speedometer read 55 mph, and the speed limit was 15 to 20 mph. *Id.* ¶¶ 2, 8. In determining this evidence was insufficient to establish the defendant was traveling at least 21 mph over the speed limit, we noted:

> "Although [the officer] testified that his speedometer read 55 [mph] during the pursuit, there is no evidence as to the period of time he drove at this speed, whether this was a constant speed during the pursuit or whether it was simply the speed to which he accelerated in order to catch up to defendant's car. Furthermore, there is no evidence dealing with the relationship of [the officer's] and defendant's vehicles during the pursuit, whether defendant was pulling away from [the officer] or whether [the officer] was gaining on defendant, from which the trier of fact could reasonably infer defendant was traveling at least 21 [mph] over the speed limit." *Id.* ¶ 8.

¶ 20    The court therefore reduced the defendant's conviction from aggravated fleeing or attempting to elude a peace officer to fleeing or attempting to elude a peace officer. *Id.* ¶ 12.

¶ 21    We are unpersuaded by defendant's reliance on *Lipscomb* for the proposition that Trevarthen's testimony was too "ambiguous" to sustain his conviction. After pursuing defendant for a block, Trevarthen noticed that he was traveling 55 mph in a 30-mph zone, and that defendant was pulling away from him. In other words, defendant was gaining distance on Trevarthen. Trevarthen acknowledged that he did not pace defendant's vehicle for two blocks, but explained that after pacing defendant for one block, he terminated the pursuit due to safety and traffic

concerns based on the speed and traffic conditions. As this court has held, a defendant's speed may be established through the direct testimony of an officer. *Id.* ¶ 7. In this case Trevarthen's testimony detailed his pursuit of defendant and the facts that as Trevarthen was traveling at 55 mph through a 30-mph zone defendant was pulling away from Trevarthen's vehicle and a further pursuit was too dangerous.

¶ 22    In the case at bar, the evidence was such that the trial court, as the trier of fact, could reasonably find that defendant was driving at least 21 mph over the speed limit. We reverse a conviction only when the evidence was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Brown*, 2013 IL 114196, ¶ 48. This is not one of those cases. Accordingly, we affirm defendant's conviction for aggravated fleeing or attempting to elude a peace officer.

¶ 23    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.