2021 IL App (2d) 200243-U
No. 2-20-0243
Order filed December 17, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 17-CF-274 17-CM-402 |
| SHARON S. MITCHELL, | ) ) ) | Honorable Joseph R. Voiland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant was properly convicted of violating a stalking no-contact order based on (1) photographs showing where she had parked her car relative to her neighbor's house, (2) a police officer's testimony that he had measured the driver's side door of defendant's car to be less than 100 feet from the neighbor's house, and (3) defendant's testimony admitting that, if she had parked in the location depicted in the photographs, her car would have been within the 100-foot perimeter.

¶ 2   After a jury trial, defendant, Sharon S. Mitchell, was convicted of violating a stalking no-contact order (740 ILCS 21/125 (West 2016)).  On appeal, she contends that she was not proved guilty beyond a reasonable doubt.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The indictment against defendant alleged that, on or about July 6, 2017, having previously been served with the stalking/no-contact order in case No. 15-OP-241, she knowingly committed an act prohibited by the order, in that she knowingly came within 100 feet of the residence of Trisha Hutson. The offense was charged as a felony based on a prior conviction of violating a similar order.

¶ 5     At trial, Hutson testified on direct examination as follows. At all pertinent times, she resided in a duplex on Hoffman Street in Plano. Defendant resided across the street and to the left of Hutson's home. On January 7, 2016, Hutson obtained a stalking no-contact order, effective until January 7, 2018, requiring defendant to stay at least 100 feet from Hutson's home.

¶ 6     Hutson testified that, on July 6, 2017, at about 6 p.m., she was at home. She looked out the front window. Defendant was in her own driveway, unloading groceries from a black Mercedes SUV and taking the packages into her home. Parked in front of the SUV, further from the street, was a Dodge Durango. Defendant's two dogs were outside. Hutson watched defendant and, on her cell phone, she recorded what she saw.

¶ 7     Hutson testified that, after defendant finished taking her groceries inside, she let one dog into her house, let the other dog into the back of the Mercedes, shut the rear hatch, and entered the Mercedes. She pulled out of the driveway and parked on Hutson's side of the street, "right off the front corner of [Hutson's] property line." A flag in Hutson's yard "[r]ight by the sidewalk" marked the boundary line of Hutson's property, and a covered manhole in the parkway was "right off the edge of [Hutson's] property line." Defendant sat in the Mercedes for a short time, opened the rear hatch to let the dog out, then walked to her home and entered.

¶ 8 Hutson's cell-phone video was played. Hutson identified the property flag and the manhole cover.

¶ 9 Hutson testified that, after observing defendant, she called the police. Officers arrived and took photographs of defendant's Mercedes. The photographs were published to the jury.

¶ 10 Hutson testified on cross-examination as follows. In the video, defendant never made any hand gestures toward Hutson's home and never looked in that direction. Parking was prohibited on defendant's side of the street. Hutson had previously measured the distance between her front door and the property-line flag, but she did not recall exactly when. Shown People's exhibit No. 4-B, a photograph of defendant's Mercedes relative to the property flag, Hutson testified that the Mercedes appeared to be directly in front of the flag. Hutson testified similarly as to Defendant's exhibit No. 2, another photograph of the Mercedes and the flag. The photograph included a manhole cover; the flag and the manhole cover were "perpendicular."

¶ 11 Randy Greer, a Kendall County sheriff's deputy, testified that, on January 15, 2016, he served defendant personally with a copy of the stalking no-contact order.

¶ 12 Sergeant Aaron Smith of the Plano Police Department testified on direct examination as follows. On July 6, 2017, shortly after 6 p.m., he and officers Scott Hogan and Shawn Cook responded to the Hoffman Street address, met with Hutson, and read over the 2016 order. Smith saw the Mercedes parked to the right of Hutson's residence. Smith measured the distances between the driver's side door of the Mercedes, respectively, and (1) the property flag and (2) Hutson's front door. Cook stayed at the driver's-side door of the Mercedes, holding a measuring tape, and Smith stretched the tape to each point. The results were (1) 28 feet and 8 inches and (2) 85 feet and 8 inches, respectively. Hutson's front door was not the closest part of her home to the

Mercedes. The officers took photographs of the Mercedes. These photographs were admitted into evidence.

¶ 13    Smith testified on cross-examination as follows. The officers did not take any photographs of the measurements. Shown Defendant's exhibit No. 2, Smith testified that the property flag and the manhole cover did not appear to be in line with each other. He could not tell from the photograph whether the Mercedes was parked on the property line or beyond it.

¶ 14    The State rested.

¶ 15    Defendant testified on direct examination as follows. She resided on Hoffman Street in Plano. On January 6, 2017, she returned from grocery shopping and parked her Mercedes in the driveway. Because "the Durango was coming out," she parked the Mercedes across the street. At that point, she believed that she was more than 100 feet from Hutson's residence.

¶ 16    Defendant testified on cross-examination as follows. On January 6, 2017, she knew that she was not to come within 100 feet of Hutson or her residence. When she pulled out of her driveway, she drove to the right of her home and parked in front of a tree. Defendant acknowledged that she could have parked further down the street and still have walked back to her home. She never measured where the 100-foot line would have been. However, when she parked, she believed that she was outside the line. Asked how far she had believed she was from Hutson's residence, defendant testified, "I didn't know. I didn't know what feet—I walk in that same area all the time." Asked again to state how far she had believed herself to be from Hutson's residence, defendant testified,

> "I know it was not borderline, like a hundred and ten feet. It was far enough away so it was—it was no—it was far enough away where—I can't say oh, no. It was a hundred and

feet five [*sic*]. I knew for a fact it would be farther away where I was so close that I was in violation."

¶ 17 Defendant testified on redirect that the tree in front of which she parked was located beyond Hutson's residence. On re-cross, defendant testified that she did not park "right by the manhole cover" and that she never parked there. Shown People's exhibit No. 4-B, defendant denied that it showed where she had parked the Mercedes on July 6, 2017. She "never park[ed] by that manhole thing. The examination concluded:

"Q. So, you weren't parked by that manhole cover on July 6th?

A. Correct, no.

Q. Because you knew you had to park further down to be outside the hundred feet?

A. Correct."

¶ 18 The jury found defendant guilty and she was sentenced her to 18 months' probation. We allowed defendant to file a late notice of appeal.

¶ 19                                    II. ANALYSIS

¶ 20 Defendant contends that she was not proved guilty beyond a reasonable doubt, because the State did not prove that (1) she parked within 100 feet of Hutson's home and (2) she knew that she was within the barrier. For the following reasons, we affirm.

¶ 21 When deciding a challenge to the sufficiency of the evidence, we ask whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. The fact finder may make all reasonable inferences from the evidence. *People v. Merritt*, 318 Ill. App. 3d 115, 117 (2001). We do not retry the defendant. *Id.*

¶ 22    We hold first that the State proved that defendant came within 100 feet of Hutson's residence. The photographs and the testimony of Hutson and Smith established precisely where she parked the Mercedes. Smith testified unequivocally that he stretched a tape measure from the vehicle to the front door of the residence and obtained a reading of 85 feet and 8 inches. This was well within the prohibited area, especially as Smith testified that the front door was not the part of the residence that was closest to the Mercedes. The jury could credit the foregoing straightforward, specific, and clear evidence.

¶ 23    Nonetheless, defendant argues that the evidence of distance was "weak" because Smith did not "record his measurement or present evidence concerning the measuring tape itself." Defendant does not explain why either imperfection required the jury to disbelieve Smith. Even if Smith did not record the measurements (which is a debatable inference), he testified to them. Defendant requests that we redetermine witness credibility and reweigh the evidence—, *i.e.*, retry her. As noted above, we will not do so.

¶ 24    We hold second that the State proved that defendant knew that she was parked within 100 feet of Hutson's residence. The State had to prove that defendant committed a "knowing" violation of the stalking no-contact order. 740 ILCS 21/125 (West 2016). Further,

> "A person knows, or acts knowingly or with knowledge of:
>
> > (a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2016).

¶ 25    The evidence proved knowledge.  Indeed, as the State notes, defendant herself provided direct evidence that she knew that the location depicted in the photographs, and testified to by Hutson and Smith, was within the prohibited zone.  On re-cross-examination, she testified that, on July 6, 2017, she did not park by the manhole cover, because "[she] knew she had to park further down to be outside the hundred feet."  Thus, defendant *admitted* that she knew that the manhole cover was less than 100 feet from Hutson's residence.  She attempted to avoid the implication of this admission by testifying that she did not park by the manhole cover.  But the jury could credit the photographic evidence and the testimony of Hutson and Smith proving that she did.  Thus, the jury could reasonably find that knowledge had been proved beyond a reasonable doubt.  Indeed, the evidence was compelling.

¶ 26    In any event, even absent defendant's testimony on re-cross-examination, a reasonable factfinder could have inferred beyond a reasonable doubt that defendant knew that she had come within 100 feet of Hutson's residence.  This is especially so because, to prove knowledge, the State did not need to prove that defendant was certain that she had crossed the line, but only that she had "awareness of the substantial probability" that she had done so.  720 ILCS 5/4-5(a) (West 2016).  Defendant parked more than 14 feet within the line.  As she admitted, she could easily have parked much further down the street.

¶ 27    Even aside from defendant's admission that she knew that the manhole cover was forbidden territory, her testimony did not help her.  Asked to state how far she had believed herself to be from Hutson's residence, defendant stated, "It was far enough away so it was—it was no— it was far enough away where—I can't say oh, no.  It was a hundred and feet five [*sic*]."  Suffice it to say that this testimony did nothing to given rise to a reasonable doubt.

¶ 28                                          III. CONCLUSION

¶ 29    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 30    Affirmed.